# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT J. HUSICK,              )
                              )
            Plaintiff,         )
                              )    Civil Action No. 07-1175
    vs.                        )    Judge Nora Barry Fischer
                              )
ALLEGHENY COUNTY,              )
                              )
            Defendant.         )

## MEMORANDUM OPINION

## I.    Introduction

This matter comes before the Court on Defendant Allegheny County's Motion to Dismiss

(Docket No. 10) Plaintiff Robert J. Husick's (hereinafter "Plaintiff" or "Husick") Complaint (Docket

No. 1) based on his failure to timely exhaust his administrative remedies pursuant to the rule

pronounced in *First Judicial Dist. v. PHRC*, 556 Pa. 258 (1999), more fully discussed below.

Plaintiff initiated this action against Defendant alleging that he was terminated from his employment

at the Allegheny County Court of Common Pleas as a result of his gender,[1] race,[2] age[3] and claiming

---

[1]  Relative to this claim, Plaintiff testified that then Administrative Judge Donna Jo McDaniel was "getting rid of" exclusively male employees "virtually the day after she became presiding judge." (Docket No. 33 at 30:19-22).

[2]  As to this claim, Plaintiff testified when he was assigned to Judge Cheryl Allen, as detailed herein, he was asked whether he knew Judge Allen's entire staff was black and that he would never work with a white judge again. (Docket No. 33 at 34:17-23). Plaintiff also testified that he is not positive who replaced him, but that "it could be the black employee, male, named David Lineberg." (Docket No. 33 at 30: 3-7).

[3]  In support of this claim, Plaintiff testified that he was 53 at the time of the alleged discrimination and that Judge McDaniel told him he had been with the Court of Common Pleas "a long time." (Docket No. 33 at 31:2, 11-13). On the day he was fired, he was told again that he had been there "too long." (*Id.* at 32:2-4, 18-19).

retaliation[4] in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, and the

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq*. For the reasons more

fully outlined herein, the Court DENIES Defendant's Motion to Dismiss. (Docket No. 10).

## II.    Factual Background[5]

Because the timing of events underlying Plaintiff's actions and his contact with the Equal

Employment Opportunity Commission ("EEOC") are essential in determining this motion, the facts

are organized chronologically. The following facts are accepted as true for purposes of analyzing the

instant motion and are gleaned from the record and taken in the light most favorable to Plaintiff, the

non-moving party. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)(citing *Pryor

v. NCAA*, 288 F.3d 548, 559 (3d Cir. 2002)); *see also Leatherman v. Tarrant County Narcotics

Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).

### A.    Plaintiff's Hiring and Firing

Plaintiff avers that he was judicially appointed to the Allegheny County Court of Common

Pleas by the late Judge Robert E. Dauer but that his order of appointment was signed by the late

Judge Henry Ellenbogen. (Docket No. 1 at 4). He claims that at the time of his appointment, he was

told that his job "was for life." (*Id.*). Plaintiff worked for twenty-nine years as an unassigned minute

clerk in the court. (*Id.* at 2).

During the first week of February of 2004, Plaintiff claims to have met with then Criminal

---

4

    Specifically, Plaintiff asserts that he was assigned to Judge Allen and told that if he was not going to work in
her chambers, then he would be fired. (Docket No. 33 at 35:22-24). Also, he maintains that Judge McDaniel assigned
him to Judge Allen because she wanted him to quit as she was allegedly wanted to "get rid of...as many Judge Dauer
people as she possibly could." (*Id.* at 33:6-8; 35:17-24).

5

    Plaintiff is proceeding  *pro se*.  Hence, his allegations are to be liberally construed as he is held to a less
stringent standard than attorneys.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Division Administrative Judge Donna Jo McDaniel to discuss his position with the court as an unassigned clerk in the Criminal Division.[6] (*Id.*). At that meeting, Plaintiff alleges that Judge McDaniel assigned him to Judge Cheryl Allen, who had been transferred back to the Criminal Division from the Juvenile Section.[7] (*Id.*). Plaintiff claims that Judge McDaniel repeatedly asked him if he knew that Judge Allen is a black woman, and that her staff was comprised solely of black females. (*Id.*). To that end, Judge McDaniel allegedly asked him, "[d]o you realize that you don't fit in there?" (*Id.*). Judge McDaniel further questioned Plaintiff about his knowledge of Judge Allen's regular schedule, i.e, that she routinely worked through lunch and until 6:00 or 7:00 p.m. at night. (*Id.*). Plaintiff also avers that Judge McDaniel knew it was important for him to leave work at 4:30 p.m. in order to pick up his wife,[8] who is deaf. (*Id.*; Docket No. 33 at 38:3). In response, Judge McDaniel informed him that he could not work with any other judge or staff. (*Id.*). Specifically, she allegedly stated that "if for any reason you are not working for Judge Allen, I am going to get rid of you." (*Id.*). Plaintiff claims that Judge McDaniel harassed him in an attempt to force him to quit. (*Id.*). Nevertheless, Plaintiff accepted the position with Judge Allen, as he planned to retire in a few years. (*Id.*).

On April 5, 2004, Plaintiff became Judge Allen's clerk. (*Id.*). After twenty-two months of

---

[6]

Judge McDaniel was elected to the bench in 1985 and was elevated to the position of President Judge in December of 2008. *See McDaniel 1st woman elected president judge in Allegheny*, available at: http://www.pittsburghlive.com/x/pittsburghtrib/news/cityregion/s_602748.html; last visited June 17, 2009.

[7]

Judge Allen became a sitting Judge on the Court of Common Pleas in Allegheny County in 1990, and in November of 2007, was elected to the Pennsylvania Superior Court. *See* Judges of the Superior Court, available at: http://www.superior.court.state.pa.us/bios.htm#allen; last visited June 17, 2009.

[8]

At the time of this conversation, Plaintiff's wife was employed at Allegheny General Hospital, and her hours were 6:00 a.m. to 2:30 or 3:00 p.m. (Docket No. 33 at 38: 3-5).

clerking for Judge Allen, in early January of 2006, Judge Allen met with Plaintiff and asked him whether he was happy with his new position, to which Plaintiff raised the issue of his daily departure time and the need to leave by 4:30 p.m. for his wife.[9] (*Id.*). Judge Allen gave him permission to continue to leave at 4:30 p.m. as long as he obtained a substitute to stay after 4:30 p.m.[10] (*Id.* at 3; Docket No. 33 at 36:4-14). Thereafter, on January 25, 2006, Plaintiff was told by his supervisor, Al Russo, to go to Judge McDaniel's office where he met with Judge McDaniel and Helen Lynch, Esquire, the Criminal Division Administrator. (Docket No. 1 at 3). During the meeting, Plaintiff was informed by Ms. Lynch and Judge McDaniel that his employment was being terminated effective immediately. (*Id.*). Plaintiff claims that Ms. Lynch told him that it had nothing to do with his work performance, but that they were "not happy" with his attitude and that he was a "rude employee." (*Id.*). Further, they told him that he was the "best minute clerk" but that it did not matter because he was "rude to the wrong people." (*Id.*).

During this meeting, Ms. Lynch gave Plaintiff his termination letter, which stated that Plaintiff had:

> [M]isrepresented information to a Criminal Division Judge to whom [he] was assigned, to court personnel, the Sheriff's Department and members of the public. In a separate matter, potentially compromised the safety of this Judicial Officer by not following established security precautions regarding a [criminal] defendant. These actions are inappropriate for a Senior Minute Clerk and undermine the integrity

---

[9]

      Plaintiff testified that his wife is deaf and only worked until 3:00 p.m. at Allegheny General Hospital; therefore, she would have to wait for him to get off work at 4:30 p.m. (Docket No. 33 at 38: 4-7).

[10]

      To this end, Plaintiff states that his assigned work hours were 8:30 a.m. until 4:30 p.m., with a lunch break from 12:00 p.m. until 1:30 p.m. (Docket No. 1 at 2). Plaintiff claims that he routinely arrived at work at about 6:30 a.m. and worked through lunch until 4:30 p.m. (*Id.*). Judge Allen, however, allegedly told Plaintiff that "she is going to work the hours that she wants to work." (*Id.*).

of the court system and the safety of our staff and public.[11]

(Docket No. 22-3 at 1). This letter also alluded to previous discussions about his work performance.[12] (*Id.*). The letter further informed Plaintiff that his final paycheck would include compensation for any unused vacation days.[13] (Docket No. 22-3 at 1). The letter also advises Plaintiff that if he had any questions regarding benefit options, his pension, or payroll matters, to contact the appropriate offices of the County. (Docket No. 22-3 at 1). Significantly, these offices include the Allegheny County Department of Human Resources (for benefit questions), the Allegheny County Retirement Board (for pension questions), and the Court Human Resources Office (for payroll questions). (Docket No. 22-3 at 1). Helen Lynch signed the letter and copies were provided to Judge McDaniel and Raymond L. Billotte, Court Administrator. (Docket No. 22-3 at 2).

Plaintiff states that the termination letter is vague and imprecise, and "allude[s] to incidents of which he is "unclear and uncertain" and that were not discussed at the meeting. (Docket No. 1 at 3-4). Plaintiff does not understand why he was terminated or what specific incident gave rise to his termination. (*Id.* at 4). Rather, he believes Judge McDaniel discriminated against him when she placed him "in [Judge Allen's] courtroom stressing that the employees of that room where [sic]

---

[11]

Plaintiff has vigorously denied all of these allegations. (*See* Docket No. 33 at 41:7-25; 42:1-14).

[12]

At the hearing on the Rule to Show Cause why Plaintiff's case should not be dismissed, Plaintiff explained that during a Friday pretrial conference, which he was handling without the presence of a judge, a criminal defendant did not show up and thus he advised the attorney representing the defendant that he was going "tell Judge Allen on Monday that [he] was going to issue a warrant or just notify her of this." (Docket No. 33 at 44:11-18). Plaintiff claimed that this attorney, who had been hired in a "little adjunct office" of the public defender's office by Helen Lynch and Richard Narvin, wrote a letter saying Plaintiff gave him a hard time and forced him to have his client show up unnecessarily. (*Id.* at 44:22-25). Plaintiff was then "called in" by Helen Lynch who allegedly said to him "don't you understand who these people are, we hired them and you are going to have to help them a little more." (*Id.* at 45: 2-7). When asked who the attorney was, Plaintiff could not recall his name. (*Id.* at 45: 8-10).

[13]

However, Plaintiff claims to have not received pay for twenty-five unused vacation days and ninety-five unused sick days. (Docket No. 1 at 4; Docket No. 33 at 45:25; 46:1-7).

'black and female'" and that he would not fit in because of that. (*Id.*). In fact, he claims that he was assigned to Judge Allen's courtroom on the basis of his race and gender alone,[14] and that after his termination, Judge McDaniel replaced him with an appointee from the District Attorney's office. (*Id.*). Plaintiff further alleges that at the time of his termination, Judge McDaniel had terminated several other employees and replaced them with relatives and friends consistent with her "setting up a self-appointed power base" and "getting rid of...as many Judge Dauer people as she possibly could." (*Id.*; Docket No. 33 at 33:6-9). Plaintiff further avers that one of his co-workers, Lisa Franklin, was also fired for discriminatory reasons.[15] (Docket No. 1 at 3-4).

### B. Plaintiff's Filing with the EEOC

Within 30 days of his termination, i.e. on or about February 25, 2006, Plaintiff claims that he contacted the EEOC by phone and was informed that he had 300 days to file a discrimination charge. (Docket No. 18 at 2; Docket No. 22 at 1). Plaintiff then allegedly contacted an attorney, Samuel J. Pasquarelli,[16] within 60 days of his termination, who also told him that he had 300 days

---

[14]

The Court notes that in his Complaint, although he has listed age as a basis for his discrimination claims (Docket No. 1 at 4), Plaintiff does not plead specific allegations in support of his claim of age discrimination under the ADEA. At the hearing on the Rule to Show Cause as to whether Plaintiff's Complaint should be dismissed, Plaintiff testified that he was 53 at the time of his dismissal and was replaced with a much younger man, however, Plaintiff does not know the age of that man. (Docket No. 33 at 28: 22-25; 29:1-3). Plaintiff further testified that he doesn't really know who replaced him, but that he was under the impression that it was a black male. (Docket No. 33 at 29:13-15).

[15]

Plaintiff also states that Lisa Franklin, at the time of the filing of his Complaint, was awaiting an EEOC decision. (Docket No. 1 at 4; Docket No. 33 at 14:19-20). A review of the court records of the Allegheny Court of Common Pleas reveals that Ms. Franklin did file a lawsuit there against <u>both</u> the Court of Common Pleas and Allegheny County. However, she filed her suit under the Family and Medical Leave Act, 28 U.S.C.§§ 2601, *et seq.*; therefore, she was not obligated to file a charge with the EEOC before bringing her lawsuit. *See Franklin v. Allegheny County, et al.*, GD-07-017049.

[16]

Samuel J. Pasquarelli, Esquire is a shareholder in the Pittsburgh law firm of Sherrard, German & Kelly, P.C.; he focuses his practice in the areas of litigation, labor law, and labor relations. *See* http://www.sgkpc.com/attorneys/samuel_pasquarelli.htm; last visited June 17, 2009. He is also an adjunct professor of labor law at the Pittsburgh Campus of The Graduate School of Industrial Relations of St. Francis College of Loretto, Pennsylvania. *Id.* Plaintiff claims that Mr. Pasquarelli was going to represent him and told Plaintiff "there was no need for [him] to come on board until [Plaintiff] first went to the EEOC." (Docket No. 33 at 8: 8-10). "Depending on that

to file. (Docket No. 22 at 1; Docket No. 33 at 8:5-15; 12:12-21). Specifically, Plaintiff states that he called Mr. Pasquarelli two to four additional times, including calling on his cell phone, and that in all of these conversations, Mr. Pasquarelli confirmed that he had 300 days to file. (Docket No. 22 at 1; Docket No. 33 at 12: 11-13). Plaintiff alleges that he later met with an EEOC official at the agency's Pittsburgh office within 75 days of his termination, on or about April 10, 2006, and was again assured that he had 300 days to file a charge. (Docket No. 22 at 1). At the hearing on the Rule to Show Cause, Plaintiff testified that his discussion with the EEOC official on April 10th was not very long and that he asked to see someone about filing his complaint. (Docket No. 33 at 11:23-25). When Plaintiff expressed a desire to file his charge with the EEOC that day, he was told that it was not EEOC procedure "to do it on the spot." (*Id.* at 12:3). Rather, he contends that the EEOC official requested that he fill it out at home or bring back the completed paperwork at a later time. (*Id.*; Docket No. 33 at 12:4-8).

Thereafter, Plaintiff claims to have had several more, "at least three to four more" discussions with Mr. Pasquarelli, while he also talked with a couple of other attorneys, all of whom assured him he had 300 days to file. (Docket No. 33 at 12:11-19). Plaintiff claims that Mr. Pasquarelli offered to answer questions Plaintiff might have filling out his EEOC paperwork, and that Lisa Franklin also helped him with his paperwork. (Docket No. 33 at 14:2-17). He also testified that he was informed by many other attorneys, between five and ten in number, that he had 300 days to file. (*Id.* at 15: 1-

---

outcome," Mr. Pasquarelli would proceed as his attorney "and file a federal lawsuit." (*Id.* at 8: 12-15). Mr. Pasquarelli told Plaintiff he would have to charge a fee if he were to assist Plaintiff at the EEOC level, and that "there's nothing [Plaintiff] can't do on [his] own at the EEOC." (Docket No. 33 at 13: 10-14). Plaintiff says he does not have any written documents from Mr. Pasquarelli confirming this interaction, nor did Plaintiff ever sign a power of attorney with Mr. Pasquarelli. (*Id.* at 8: 16-21; 13: 11-22).

6). Plaintiff returned to the EEOC's office many weeks after his initial visit, in July of 2006,[17] to again attempt to file his discrimination charge, but was told that he needed to first schedule an interview and meet with an EEOC agent. (Docket No. 22 at 1). An interview was scheduled for October 30, 2006 with Constance Smith of the EEOC. (*Id.*).

On October 30, 2006, approximately 275 days after his termination, Plaintiff filed his formal charge with the EEOC against the Allegheny County Court of Common Pleas Criminal Division and had a three hour interview with Ms. Smith.[18] (Docket No. 18 at 2; Docket No. 22 at 2; Docket No. 33 at 19: 13-17). Plaintiff next claims he received a phone call from an EEOC employee in April of 2007 informing him that the Allegheny County Court of Common Pleas had filed a motion to dismiss for untimeliness (*see* Docket No. 28-3 at 2), which Plaintiff purports they filed three times.[19] (*Id.*). Plaintiff further contends that he was reassured again by an EEOC employee during this phone call that he had timely filed his charge. (*Id.*). Specifically, Plaintiff testified that the EEOC employee said "we are not understanding why she can't get it and why she keeps the same motion coming to us time and again" and that the EEOC was "positive" he had 300 days to file. (Docket No. 33 at 17:4-12). To that end, Plaintiff provided the Court with a copy of an email from John Wozniak,

---

[17]

When asked why he waited so long to go back to the EEOC, Plaintiff testified that he waited because all of the people to whom he claimed to have talked about his EEOC action told him to delay as long as he could in order to try and get an amicable resolution with the Court of Common Pleas. (Docket No. 33 at 53:19-25).

[18]

Plaintiff never filed a separate charge against Defendant Allegheny County. (Docket No. 33 at 27: 5-19). Thus, it is Defendant's contention that since Plaintiff has not exhausted his administrative remedies against the instant Defendant, his claims fail. (Docket No. 11 at 2; Docket No. 33 at 27: 5-10).

[19]

In response to this allegation, Defendant's counsel stated that it did not file a motion to dismiss Plaintiff's claim before the EEOC three times, but rather it filed a motion to dismiss in three other claims before the EEOC based on the rule that Pennsylvania state court employees must file an EEOC charge within 180 days of their discharge. (Docket No. 33 at 26:5-17). Defendant has provided the Court and Plaintiff with copies of these motions filed in the following cases before the EEOC: Wilbert Wright, Charge No. 172A20257 (charge filed on November 2, 2001); Walter Berkoski, Charge No. 172-2003-01528 (charge filed October 20, 2003); and Ruth Vranesevic, Charge No. 533-2007-01300 (charge filed August 6, 2007). (Docket No. 30-2 at 6-12).

EEOC investigator, to Jennifer Stroschein, a legal assistant in the legal department of Allegheny

County, dated April 23, 2007, wherein Mr. Wozniak stated the following:

> The Commission takes the position that although [the Court of
> Common Pleas] asserts the defense that this is an untimely matter,
> (beyond a 180-day time period to file a charge of employment
> discrimination), because the Pennsylvania Human Relations
> Commission is a Fair Employment Practices Agency at the state level,
> [Plaintiff] is provided with the protection of filing a charge of alleged
> discrimination with the EEOC as long as it is within a 300-day time
> period. The record reflects that [Plaintiff] submitted a minimally
> sufficient charge with the EEOC that was received date and time
> stamped on 11/01/06. Therefore, the date difference between
> 01/25/06 through 11/01/06 is 280 days, well within the 300-day time
> period for filing a timely charge.

(Docket No. 26-2 at 3). Mr. Wozniak then provided two options, offered by Plaintiff, for the Court

of Common Pleas to consider in an effort to reach an amicable resolution. (*Id.*).

However, a month later on May 31, 2007, Plaintiff testified that he received a phone call

from Ron Dean, head of the Pittsburgh EEOC office, informing him that they had sent the Court of

Common Pleas' motion to dismiss to the Philadelphia EEOC office, which concluded that he did not

timely file his charge due to the "law in Pennsylvania that the EEOC has exclusive jurisdiction over

claims brought by state court employees, and therefore, he had 180 and not 300 days to file his

charge." (*Id.*; Docket No. 33 at 17:13-22, 25; 69:2-4). Mr. Dean allegedly said to Plaintiff that the

EEOC was "absolutely stymied, we're overwhelmed, we don't know what to say" and that the

Pittsburgh EEOC had just found out about the law concerning the 180-day limitation for

Pennsylvania state court employees.[20] (Docket No. 33 at 17:16-22). Plaintiff alleges that he received

apologies from Mr. Wozniak and Mr. Dean and another woman, the name of whom Plaintiff cannot

---

[20]

Upon this Court's inquiry concerning Plaintiff's contact with Mr. Dean, Plaintiff stated that he did not take notes
of any of his contacts with employees of the Pittsburgh EEOC. (Docket No. 33 at 18:14-20; 20:12-15).

remember. (Docket No. 33 at 23:8-10). The EEOC then granted the motion to dismiss and issued a dismissal and notice of right to sue letter to Plaintiff dated May 31, 2007. (Docket No. 26-2 at 1).

## III.    Procedural History

On August 28, 2007, Plaintiff filed his Complaint against Defendant Allegheny County. (Docket No. 1). He did not sue the Court of Common Pleas. On December 27, 2007, this Court issued an Order stating that the Complaint would be dismissed pursuant to Federal Rule of Civil Procedure 4(m) for Plaintiff's failure to make service on Defendant within 120 days of the filing of the complaint, unless good cause was shown why service was not made by January 10, 2008. (Docket No. 5). On January 3, 2008, the Court received Plaintiff's response thereto, dated December 29, 2007, in which Plaintiff verified that his Complaint was mailed to Defendant on December 19, 2007 with copies of his post office receipt and the return receipt signed by Defendant County's Solicitor's office. (Docket No. 6).[21]

On February 20, 2008, Defendant filed a Motion to Dismiss and a Brief in Support.  (Docket Nos. 10 and 11). Pursuant to this Court's Order on Motions Practice (Docket No. 12), Plaintiff was ordered to respond by March 11, 2008, but failed to do so.  Plaintiff did not move to enlarge the time to respond nor did Plaintiff contact the Court by telephone or email. Accordingly, on March 17, 2008, this Court granted Defendant's Motion to Dismiss (Docket No. 10) for lack of opposition and dismissed the action.  (Docket No. 13). On April 16, 2008, Plaintiff appealed this order to the United States Court of Appeals for the Third Circuit. (Docket No. 14).

---

[21]

In response to Plaintiff's filing on January 3, 2008, which was mailed directly to this Court in contravention of this Court's Policies and Procedures, the Court entered an Order reminding Plaintiff that any and all other filings must be submitted through the Office of the Clerk of Court, that Plaintiff is to comply with the Federal Rules of Civil Procedure and the Local Rules of this Court, and that failure to do so could result in dismissal for failure to prosecute. (Docket No. 7).

On January 21, 2009, the United States Court of Appeals for the Third Circuit vacated the Court's Order of March 17, 2008 dismissing Plaintiff's case and remanded the matter for further consideration raising the potential application of equitable estoppel to Plaintiff's claims. (Docket No. 16). That same day, the Court entered an order directing Plaintiff to respond to Defendant's Motion to Dismiss and Brief in Support (Docket Nos. 10 and 11) by no later than February 10, 2009. (Docket No. 17). On February 10, 2009, Plaintiff filed his Response and Brief in Support to Defendant's Motion. (Docket Nos. 18 and 19). Upon consideration of same, on February 11, 2009 the Court ordered Plaintiff to file any and all information and/or documents evincing his alleged contact with the EEOC along with a copy of his termination letter by February 22, 2009. (Docket No. 21). In response, on February 20, 2009, Plaintiff filed his termination letter and the general intake questionnaire, dated October 30, 2006, which he completed and submitted to the EEOC. (Docket Nos. 22-2, 22-3).

A hearing on the instant motion was held on March 4, 2009, wherein Defendant withdrew its argument for dismissal pursuant to Federal Rule of Civil Procedure 10(b). (Docket No. 33 at 66:6-11). During said hearing, Plaintiff responded to Defendant's arguments regarding the timeliness of his EEOC charge and testified under oath as to the substance of his claims.[22] (Docket No. 25; Docket No. 33). At the conclusion of the hearing, the Court granted the parties leave to file supplemental briefs, ordered Plaintiff to file any further documents which tend to support his claims, and ordered Defendant to file a supplement to its Motion to Dismiss. (Docket No. 25).

On March 6, 2009, Plaintiff filed his Supplement, attaching his right to sue letter from the

---

[22]

In Plaintiff's "Motion for Reconsideration" of this Court's notice scheduling the hearing on Defendant's motion, he requested to participate by telephone, which the Court granted allowing Plaintiff to appear by telephone given the fact that Plaintiff had relocated to Phoenix, Arizona, and claims he is without financial means to make a trip to Pittsburgh, Pennsylvania. (Docket Nos. 23; Text Entry Order, Feb. 25, 2009).

EEOC. (Docket Nos. 26 and 26-2). Defendant filed its Supplement on March 24, 2009.[23] (Docket

No. 30). The Court convened a telephone status conference with counsel for Defendant and Plaintiff

on April 3, 2009 to discuss the potential for early neutral evaluation or mediation,[24] which Defendant

declined. (Docket No. 31). Given the additional documents from the EEOC submitted by both

parties, the Court ordered Defendant to file another supplement to its motion by April 24, 2009, with

any response by Plaintiff due by May 15, 2009. (*Id.*; Docket No. 32). On April 24, 2009, Defendant

filed its additional Supplement, to which Plaintiff responded on May 15, 2009. (Docket Nos. 34 and

35, respectively). Because the parties' briefing has concluded, the Defendant's Motion to Dismiss

is now ripe for disposition.

## IV. Standard of Review

A valid complaint requires only "a short and plain statement of the claim showing that the

pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(citing *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544 (2008)).

The Supreme Court in *Iqbal* clarified that the decision in *Twombly* "expounded the pleading

standard for 'all civil actions.'" *Iqbal*, 129 S.Ct. at 1953. The court further explained that although

a court must accept as true all of the factual allegations contained in a complaint, that requirement

---

[23]

     Defendant's Supplement was due on March 10, 2009, however, for good cause shown as to why Defendant's counsel was unable to comply with the Court's deadline, namely that Defendant's counsel had a death in her family, the Court permitted Defendant to file its Supplement to its Motion to Dismiss out of time on March 24, 2009. (Docket Nos. 28 and 29).

[24]

     Pursuant to W.D. Pa. Local Rule 16.2, Alternative Dispute Resolution is now mandatory in the Western District of Pennsylvania. W.D. Pa. L.R. 16.2(B). Information on this Court's ADR program and available neutrals is available on the Court's public website. *See* http://coldfusion.pawd.uscourts.gov/adr/pages/adr.cfm.

does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Id.* at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008); and *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315 (3d Cir. 2008). The determination of whether a complaint contains a plausible claim for relief "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

In evaluating a Rule 12(b)(6) motion, a court "may look beyond the complaint to matters of public record, including court files and records...and documents referenced in the complaint or essential to a plaintiff's claim which are attached to either the [c]omplaint or the defendant's motion." *Spence v. Brownsville Area Sch. Dist.*, Civ. A. No. 08-0626, 2008 U.S. Dist. LEXIS 55026, at *7 (W.D. Pa. July 15, 2008)(citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). Additionally, a court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp.*, 998 F.2d at 1196 (citations omitted). Otherwise, a plaintiff with a legally insufficient claim could survive a motion to dismiss "simply by failing to attach a dispositive document on which it relied." *Id.*

## V.    Discussion

Defendant argues that Plaintiff's claims are barred because he failed to timely exhaust his administrative remedies. (Docket No. 10 at 1; Docket No. 11 at 2). Because Plaintiff failed to file

a timely charge against Allegheny County within 180 days of his termination, this Court should dismiss Plaintiff's claims under Title VII and the ADEA. (Docket No. 11 at 2; Docket No. 34 at 1-2). In response, Plaintiff claims that he was precluded from timely filing an EEOC charge due to misinformation he allegedly received on numerous occasions from both the EEOC's employees and attorney Samuel Pasquarelli (and other attorneys). (Docket No. 18 at 2). To this end, Plaintiff argues that neither Attorney Pasquarelli, the Pittsburgh EEOC representatives, nor he knew of the "obscure law" holding that Pennsylvania state court employees must file administrative charges with the EEOC within 180 days of their termination. (*Id.* at 5). Therefore, Plaintiff argues, the limitations period should be equitably tolled and he should be permitted to proceed on his claims. (Docket No. 35 at 1).

## A.     Whether Plaintiff Timely Filed with the EEOC

A plaintiff bringing a Title VII[25] employment discrimination claim in federal court must first file a complaint with the EEOC and receive a right to sue letter. *Brzozowski v. Corr. Physician Servs.*, 360 F.3d 173 (3d Cir. 2004).   Failure to establish compliance with these requirements provides a district court with sufficient grounds to dismiss a Title VII claim for failure to exhaust administrative remedies. *Ganaway v. City of Pittsburgh*, Civ. A. No. 05-1657, 2008 U.S. Dist. LEXIS 8077, at *10-11 (W.D. Pa. Feb. 4, 2008)(citing *Watson v. Kodak*, 235 F.3d 851, 854 (3d Cir. 2000)). s

A plaintiff must file his or her EEOC charge within 180 days of the alleged discrimination

---

[25]

A plaintiff bringing an employment discrimination claim under the ADEA must comply with the procedural requirements set forth in Title VII, as the ADEA has adopted the enforcement scheme and remedies found in Title VII. *See* 29 U.S.C. §626(d) (2006); 42 U.S.C. §2000e-5(e), (f) (2006).  Therefore, the Court will address these substantive claims together in analyzing whether Plaintiff timely exhausted his administrative remedies.

or within 300 days if the person initially instituted proceedings with a state agency authorized to grant relief from such practice, such as the Pennsylvania Human Relations Commission ("PHRC"). 42 U.S.C. § 2000e-5(e); 29 U.S.C. §§ 626(d), 633(b); 29 C.F.R. § 1601.13; *see also Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 480 (3d Cir. 1997). Under the Pennsylvania Human Relations Act, 43 P.S. §§ 951, *et seq.*, a plaintiff must file with the PHRC within 180 days of the discriminatory conduct. 43 P.S. § 959(h). However, the PHRC does not have authority to adjudicate discrimination complaints filed by state judicial employees against the state judicial branch because of the "separation of powers" doctrine, which requires that judges retain the authority to select, discharge and supervise court employees. *First Judicial Dist. v. PHRC*, 556 Pa. 258, 263 (1999); *see also Court of Common Pleas v. PHRC*, 682 A.2d 1246, 1247 (Pa. 1996); and *Callahan v. City of Philadelphia*, 207 F.3d 668, 673 (3d Cir. 2000). Therefore, Pennsylvania state court employees are required to file their complaints with the EEOC within 180 days of their termination. *First Judicial Dist.*, 556 Pa. at 258.

Here, although Plaintiff has not brought his Complaint against the judicial branch specifically, as the plaintiff did in *First Judicial Dist.*, his suit would have the practical effect of having the PHRC "impose a policy change which would affect all employees of the court." *Id.* at 261. Therefore, Plaintiff was required to file his charge of discrimination with the EEOC within 180 days of his termination. *Id.* at 263. Because Plaintiff does not dispute that he did not formally file a charge with the EEOC until approximately 275 days after his termination, i.e., October 30, 2006 (*see* Docket No. 18 at 2), he failed to timely file his EEOC charge. The Court now turns to whether the limitations period pertaining to Plaintiff's claims should be equitably tolled based on the incorrect advice he claims to have received from both the EEOC and Attorney Pasquarelli.

15

**B.      Whether Plaintiff's Claims Should Be Equitably Tolled**

Defendant argues that Plaintiff has not set forth a claim that he was actively or in any way deceived as to the reason for his termination, therefore, equitable tolling does not apply. (Docket No. 34 at 2). Further, Plaintiff has not provided any evidence in support of his contention that the EEOC gave him incorrect information or that he attempted to file within the 180-day period. (*Id.*). Also, the fact that Mr. Wozniak, the EEOC investigator, was under the mistaken impression that Plaintiff had 300 days to file his charge does not itself establish that he discussed this with Plaintiff prior to the date on which Plaintiff filed his charge. (*Id.* at 2-3). Defendant further argues that the EEOC's belief as to the timeliness of a charge is not determinative and that there is no evidence that the EEOC's conduct actually caused Plaintiff's delay in filing his charges beyond the 180-day period. (*Id.* at 3). Additionally, because Defendant has filed three previous motions to dismiss before the EEOC based on the rule pronounced in *First Judicial Dist.*, the EEOC should have been on notice of the same. (Docket No. 33 at 26: 18-24).

Plaintiff argues in response that he filed his charge approximately 275 days after his termination because various EEOC employees, on multiple occasions, assured him that he had 300 days to file. (Docket No. 35 at 1). Further, the EEOC accepted his charge and commenced an investigation under the belief that Plaintiff's charge was timely as he filed within 300 days. (*Id.*). In support of this argument, Plaintiff points out that the EEOC did not end its investigation until the Defendant filed its motion to dismiss saying the charge was untimely. (*Id.*). Plaintiff also cites to the fact that it was not until the Philadelphia EEOC office informed the Pittsburgh office of the 180-day rule applicable to state court employees that Plaintiff's charge was dismissed as untimely. (*Id.*). Thus, Plaintiff argues, the Pittsburgh EEOC "absolutely caused the Plaintiff's late filing simply from

the fact that they (knew) the complaint was filed timely on day 280." (*Id.*).

Because the filing of an administrative charge and receipt of a right to sue letter are statutory prerequisites to commencing a civil action and not jurisdictional prerequisites, courts have held that they are subject to equitable modifications, such as tolling, in limited circumstances. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *McNasby v. Crown Cork & Seal Co., Inc.*, 888 F.2d 270, 282 (3d Cir. 1989); and *Oshiver v. Levin*, 38 F.3d 1380, 1387 (3d Cir. 1994). Equitable tolling functions to stop a statutory limitation period from running when the claim's accrual date has already passed. *Oshiver*, 38 F.3d at 1387. In *Oshiver*, the United States Court of Appeals for the Third Circuit held that equitable tolling is applied in a limited number of circumstances:

> We have instructed that there are three principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.

*Id.*[26] Paramount to successfully establishing the remedy of equitable tolling is the requirement that a plaintiff exercise reasonable diligence in preserving a claim. *In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004); *Robinson v. Dalton*, 107 F.3d 1018, 1023 (3d Cir. 1997). A plaintiff is generally not entitled to equitable tolling based on erroneous information from the EEOC unless he or she has made a diligent effort to investigate the validity of the information received. *Robinson*, 107 F.3d at 1023.

In *Robinson*, the United States Court of Appeals for the Third Circuit held that the plaintiff

---

[26]

But see, DiPeppe v. Quarantillo, 337 F.3d 326, 335 (3d Cir. 2003)(holding that the doctrine of estoppel can apply to actions of the defendant government only when a litigant can prove a misrepresentation by the government, which he or she reasonably relied on to his or her detriment and affirmative misconduct.)

failed to exercise due diligence when he relied on erroneous information about filing requirements received during one phone conversation with the Navy's Equal Employment Opportunity ("NEEO") office as he failed to confirm the advice by written communication or even by another telephone call. *Id.* The court warned that allowing a plaintiff to avoid the filing requirements in that context through equitable tolling would transform "a remedy available only sparingly and in extraordinary situations into one that can be readily invoked by those who have missed carefully drawn deadlines." *Id.* Similarly, in *Podobnik v. United States Postal Serv.*, 409 F.3d 584 (3d Cir. 2005), the court held that the plaintiff could not benefit from equitable tolling because he took no further action in preserving his discrimination claim after having received erroneous information from the EEOC. *Podobnik*, 409 F.3d at 591-92.

Unlike the plaintiffs in *Robinson* and *Podobnik*, Plaintiff[27] claims to have taken further action after having first communicated with an EEOC employee by telephone, wherein he received erroneous information concerning filing deadlines. Specifically, Plaintiff contacted an attorney about the filing deadlines, and also went to the EEOC's office in person on at least three occasions in order to speak with an employee firsthand about these matters. (Docket No. 33 at 8:17-18). In each of these instances, Plaintiff was assured that he had 300 days to file a charge. Plaintiff also made repeated attempts to verify the information by contacting an attorney, Samuel Pasquarelli, who is a well regarded labor attorney. Plaintiff also made additional contact with the Pittsburgh EEOC through live visits and telephone calls. Each time, Plaintiff claims he was reassured that he had 300

---

[27] The Court is mindful that Plaintiff was employed as a minute clerk in the Court of Common Pleas of Allegheny County Criminal Division. Although he may be well-versed in such duties, his work experience is not such that he would know the intricacies of federal employment law and practice. Moreover, he is proceeding *pro se* and to that end deference is due. *Erickson*, 551 U.S. at 94.

days to file. To that end, the email between Mr. Wozniak, the EEOC agent investigating Plaintiff's charge, and Ms. Stroschein confirms that the local EEOC office may have been under the mistaken impression as to the appropriate filing deadline. (*See* Docket No. 26-2 at 3). As noted, this email correspondence responded to the Court of Common Pleas' motion to dismiss stating:

> The Commission takes the position that although [the Court of Common Pleas] asserts the defense that this is an untimely matter, (beyond a 180-day time period to file a charge of employment discrimination), because the Pennsylvania Human Relations Commission is a Fair Employment Practices Agency at the state level, [Plaintiff] is provided with the protection of filing a charge of alleged discrimination with the EEOC as long as it is <u>within a 300-day time period</u>. The record reflects that [Plaintiff] submitted a minimally sufficient charge with the EEOC that was received date and time stamped on 11/01/06. Therefore, the date difference between 01/25/06 through 11/01/06 is 280 days, well within the 300-day time period for filing a timely charge.

(Docket No. 26-2 at 3) (emphasis added).

Accordingly, Plaintiff has sufficiently pled that he exercised the requisite due diligence in preserving his claim.[28] *Robinson*, 107 F.3d at 1023; *see also Albano v. Schering-Plough Corp*, 912 F.2d 384 (9th Cir. 1990) (equitable tolling justified where plaintiff had at least 14 conversations with the EEOC); and *Dartt v. Shell Oil Co.*, 539 F.2d 1256 (10th Cir. 1976) (equitable tolling allowed where Labor Department failed to inform plaintiff of filing deadlines despite plaintiff having made phone calls to the agency at least once a month to check on the progress of the investigation). Hence, the Court finds that there is a basis to toll the limitations period of 180 days as Plaintiff was prevented by circumstances beyond his control from timely submitting his charge. *Robinson*, 107

---

[28] In analyzing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept as true a plaintiff's version of the facts. *Phillips*, 515 F.3d at 233.

F.3d at 1023. In fact, the determination of whether a party exercised reasonable diligence for purposes of equitable tolling is typically within the province of a jury "unless the facts are so clear that reasonable minds could not differ." *In re Mushroom Transp. Co.*, 382 F.3d at 339. This is not such a case. The Court now turns to Defendant's argument that because it is a different entity from the Court of Common Pleas, Plaintiff has failed to exhaust his administrative remedies.

### C.    Plaintiff's Failure to File a Charge Against Allegheny County

Defendant argues that Plaintiff's claim must be dismissed because he has not filed a charge with the EEOC against Defendant Allegheny County. (Docket No. 33 at 4:11-17).  Rather, his EEOC filing named only the Court of Common Pleas. (Docket No. 22-2 at 1).  Accordingly, because Allegheny County and the Allegheny County Court of Common Pleas are two separate entities, Plaintiff has failed to exhaust his administrative remedies as to this Defendant. (Docket No. 33 at 27: 5-17).

In Title VII cases, courts are permitted in certain limited circumstances to equitably toll the filing requirements "even if there has been a complete failure to file, which necessarily precludes characterizing such requirements as 'jurisdictional.'" *Robinson*, 107 F.3d at 1021 (citing *Bowen v. City of New York*, 476 U.S. 467, 482 (1986)); *see also Zipes*, 455 U.S. at 392-98 (the timely filing of a complaint with the EEOC is not a jurisdictional prerequisite to bringing a suit in federal court under Title VII).  Thus, a court may excuse exhaustion of administrative remedies for the same reasons as those permitting tolling of the statute of limitations. *Bowen*, 476 U.S. at 482; *see also Waiters v. Parsons*, 729 F.2d 233, 236 (3d Cir. 1984)(failure to file EEOC complaint not jurisdictional and district court should consider application of waiver, estoppel or tolling).

Here, Plaintiff's termination letter supports his claim that he believed the Court of Common

Pleas and Defendant Allegheny County were one in the same, as it directed him to contact Allegheny County and not the Court of Common Pleas,[29] except for payroll. Specifically, the letter states:

> If you have any questions regarding benefits options following termination of service with the Court, you may contact the Allegheny County Department of Human Resources, Room 102 County Office Building, Pittsburgh, PA 15219, telephone number 412/350-6830. If you have any pension-related questions, you should contact the Allegheny County Retirement Board, Room 106 County Office Building, Pittsburgh, PA 15219, telephone number 412/350-4679. For payroll-related matters, you should contact the Court Human Resources Office, 350 Frick Building, 437 Grant Street, Pittsburgh, PA 15219, telephone number 412/350-5487.

(Docket No. 22-3 at 1). Additionally, at the hearing on the Rule to Show Cause, counsel for the Defendant stated that the Allegheny County Human Resources Department maintains the healthcare benefits information for court employees. (Docket No. 33 at 51: 3-6). To that end, the Court will now review the history behind the funding of Courts of Common Pleas in Pennsylvania.

1. *County of Allegheny v. Commonwealth*

The Pennsylvania Supreme Court in *County of Allegheny v. Commonwealth*, 517 Pa. 65 (Pa. 1987) held that the Pennsylvania Constitution requires that the state alone finance the unified judicial system, including the Courts of Common Pleas. The court stayed its own judgment in order to allow the state legislature to pass proper funding legislation. *County of Allegheny*, 517 Pa. at 76. Notwithstanding this decision, the Pennsylvania General Assembly declined to act to fund the courts. *See Pa. State Ass'n of County Comm'rs v. Commonwealth*, 545 Pa. 324, 681 A.2d 699, 700-01 (Pa. 1996). After nine years of inaction, in 1996, the Pennsylvania Supreme Court granted a writ of mandamus to the Pennsylvania Association of County Commissioners ("CCAP"). *Id.* at 703; *see*

---

[29] In Pennsylvania, there is one Court of Common Pleas for each of the sixty judicial districts of Pennsylvania; Allegheny County is the Fifth Judicial District. 42 Pa. C.S. § 901, 911.

*also Common Cause v. Pennsylvania*, 558 F.3d 249 (3d Cir. 2009). The court ordered that a master be appointed to recommend to the court a scheme which would form the basis for implementing the court's decision in *County of Allegheny*. *Id.*; *Common Cause*, 558 F.3d at 254.[30]

Thereafter, the Pennsylvania Supreme Court appointed retired Supreme Court Justice Frank J. Montemuro, Jr. as master to develop a set of recommendations. *Id.* His recommendations were issued and adopted by the Court in 1996, setting forth four phases to transfer funding and administrative duties to the state.[31]  Only the first phase of the scheme, which involved the transfer of about 200 court employees to the state consisting mainly of court administrators and deputy administrators, has been accomplished.  Thus, as the funding scheme for the support and clerk staff for the Common Pleas Courts and magisterial district justices remains unchanged to date, the compensation of these employees is still funded locally by the counties.[32] *County of Allegheny*, 517 Pa. at 71; *see also Bradley v. Casey*, 547 A.2d 455 (Pa. Cmwlth. 1988); and *Reiff v. Philadelphia County Court of Common Pleas*, 827 F.Supp. 319 (E.D. Pa. 1993). The Court will now address the relevant portions of the Judicial Code applicable to Court of Common Pleas' employees, such as Plaintiff.

### 2.     Pennsylvania's Judicial Code

The Pennsylvania Judicial Code requires that county officials provide adequate staff for the courts: "[w]henever necessary, it shall be the duty of county officers to appoint or detail such county

---

[30]

The Court notes that during this time, Plaintiff was working for the Court of Common Pleas.

[31]

*S e e*   C C A P ' s   2 0 0 9   C o u n t y   G o v e r n m e n t   P r i o r i t i e s ,   a v a i l a b l e   a t http://www.pacounties.org/SiteCollectionDocuments/2009FactSheetCourt.pdf; last visited June 17, 2009.

[32]

*See Pennsylvanians for Modern Courts*, available at http://www.pmconline.org/usingcourts/funding;  last visited June 17, 2009.

staff as shall enable the judges of the courts embracing the county to properly transact business before their respective courts." 42 Pa. C.S. § 2302; *County of Allegheny*, 517 Pa. at 71. Further, the County is required to establish and maintain a "judicial and related account." *Id.*; *see also* 42 Pa. C.S. § 3541. Specifically, section 3541 states:

> The City and County of Philadelphia, each other county of this Commonwealth, and the City of Pittsburgh shall establish and maintain on their respective books an account to be known as the judicial and related account. The account shall exist for accounting purposes only and nothing in this part shall require the actual segregation of the moneys of the account from the general funds of the political subdivision.

42 Pa. C.S. § 3541. Out of this account the County must pay the salaries, fees, and expenses of appointed judicial officers and other related personnel "which by statute are required to be paid by the political subdivision." *County of Allegheny*, 517 Pa. at 71 (citing 42 Pa. C.S. § 3544).

Pennsylvania law also requires:

> Except as otherwise provided by statute, each county shall continue to furnish to the court of common pleas and community court embracing the county, to the minor judiciary established for the county and to all personnel of the system, including central staff entitled thereto, located within the county, all necessary accommodations, goods and services which by law have heretofore been furnished by the county.

42 Pa. C.S. § 3722; *see also County of Allegheny*, 517 Pa. at 76. The Second Class County Code[33] also mandates that a salary board shall fix the compensation of certain court employees:

> The board, subject to limitations imposed by law, shall fix the compensation of all appointed county officers, and the number and compensation of all deputies, assistants, clerks and other persons whose compensation is paid out of the county treasury, and of all

---

[33] Allegheny County is a Second Class County. 16 P.S. § 3210 (counties having a population of 800,000 and more but less than 1,500,000 inhabitants are classified as second class).

> court criers, tipstaves and other court employes, and of all officers,
> clerks, stenographers and employes appointed by the judges of any
> court and who are paid from the county treasury.

*County of Allegheny*, 517 Pa. at 72 (citing 16 P.S. § 4823). Thus, it is apparent that the state legislature, before the case of *County of Allegheny*, "intended to create a legislative scheme in which funding of the various judicial districts was primarily a responsibility of the counties, and that these responsibilities include the funding of salaries, services and accommodations for the judicial system." *County of Allegheny*, 517 Pa. at 72.

Although court employees, except for those previously mentioned, are compensated by County funds, the Common Pleas Courts are considered public employers under Pennsylvania law with the "inherent right to hire, discharge, and supervise" court appointed employees. *County of Lehigh v. Commwlth., Pa. Labor Relations Bd.*, 507 Pa. 270 (Pa. 1985)(citing 43 P.S. § 1101.301; and 42 Pa. C.S. § 2301(a)(1)). 42 Pa. C.S. § 2301, titled "Appointment of personnel,"states that "[j]udge[s] and magisterial district judge[s] may appoint and fix the duties of necessary personal staff." 42 Pa. C.S. § 2301(a)(1). It further provides that the "Court may appoint and fix the compensation and duties of necessary administrative staff and fix the compensation of personal staff." 42 Pa. C.S. § 2301(a)(2). However, it goes on to state that "nothing in [this subsection] shall be construed to limit, modify or deny the existing powers or prerogatives of county staff or other officers...to appoint and fix the reasonable compensation of such classes of personnel as such county officers have heretofore been authorized to do by law." 42 Pa. C.S. § 2301(c).

      3.      Plaintiff's Belief that Allegheny County and the Court of Common Pleas are not Separate Entities

Plaintiff has testified that he filed his EEOC charge according to instructions from Mr. Pasquarelli and with the help of Lisa Franklin. (Docket No. 33 at 27: 18-25). Plaintiff claims that

given the advice of Mr. Pasquarelli, he believed that the Court of Common Pleas and Allegheny County are one in the same for purposes of this litigation and there is no need to file separate EEOC charges. (Docket No. 33 at 54:3-6). Plaintiff further testified that because Allegheny County gave him his paycheck while he work for the court, he believed that the two were equal. (*Id.* at 54: 15-17). Indeed, as discussed above, Plaintiff's compensation came from Allegheny County. *See* 42 Pa. C.S. § 3544.

The Court also notes that the Allegheny County Law Department is defending this matter and has been defending this matter since the EEOC stage. (*See* Docket No. 30-2 at 3; Docket No. 10 at 2). Therefore, although Plaintiff failed to specifically name Allegheny County as respondent to his EEOC charge, the County was sufficiently put on notice of Plaintiff's EEOC charge. *See Huggins v. Coatesville Area Sch. Dist.*, Civ. A. No. 07-4917, 2008 U.S. Dist. LEXIS 65604 (E.D. Pa. Aug. 27, 2008); *Kunwar v. Simco*, 135 F.Supp.2d 649, 653-54 (E.D. Pa. 2001); *see also Alcena v. Raine*, 692 F.Supp. 261, 269 (S.D.N.Y. 1988)(the purpose of the requirement to name all the parties involved in an EEOC charge is to give defendants adequate notice of the claims and an opportunity to voluntarily comply with Title VII's strictures). Moreover, if Plaintiff were to succeed on his claims, Allegheny County could be held liable and ordered to pay damages. *See County of Allegheny v. Wilcox*, 76 Pa. Commw. 584 (Pa. Cmwlth. 1983)(affirming decision wherein both the Allegheny County and Court of Common Pleas were sued and found jointly liable for violations of the PHRA based on sex discrimination and for damages); *see also Greer v. Court of Common Pleas*, 259 Fed. Appx. 437 (3d Cir. 2007)(affirming decision as to both the County and the Court of Common Pleas).

Plaintiff has sufficiently pled that he exercised reasonable diligence in asserting his claim against Allegheny County alone, rather than it and the Court of Common Pleas. For this reason, the

Court finds that the circumstances of this case as well as Plaintiff's *pro se* status justify excusing the requirement that Plaintiff exhaust his administrative remedies as to Defendant Allegheny County.

**VI.     Conclusion**

Accordingly, the Court DENIES, without prejudice, Defendant Allegheny County's Motion to Dismiss [10] Plaintiff's Complaint for failure to timely exhaust his administrative remedies.  An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

CC/ECF:     Counsel of record.
            Robert J. Husick, *pro se* (Regular and Certified Mail)
            19473 North Desert Mesa Drive
            Surprise, AZ 85374