**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT J. HUSICK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 07-1175** |
| | ) | **Judge Nora Barry Fischer** |
| **ALLEGHENY COUNTY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

**I.     Introduction**

        This matter comes before the Court on a motion for summary judgment filed by

Allegheny County, Pennsylvania ("Allegheny County"), the defendant in this action, pursuant to

Federal Rule of Civil Procedure 56.  (Docket No. 55).  For the reasons that follow, that motion

will be granted in part and denied in part.

**II.     Background**

        Plaintiff Robert J. Husick ("Husick") is a white male who was born on October 15, 1952.

On February 14, 1977, Judge Henry Ellenbogen ("Judge Ellenbogen"), the President Judge of the

Court of Common Pleas of Allegheny County, signed an order appointing Husick to the position

of Data Coordinator for the Criminal Calendar Control Unit of the Court of Common Pleas.

(Docket No. 57-2).  Husick's appointment became effective on February 28, 1977.  (*Id.*).  During

a meeting conducted in November 1978, the judges of the Criminal Court selected Husick to

serve as a Minute Clerk.  (Docket No. 57-3).  This action was memorialized in a letter from

Judge Robert E. Dauer ("Judge Dauer") to Judge Michael J. O'Malley ("Judge O'Malley") dated

1

November 17, 1978.  (*Id.*).

Husick's employment as a Minute Clerk was terminated on January 25, 2006.  (Docket No. 57-4).  In a letter to Husick setting forth the grounds for his discharge, Criminal Division Administrator Helen M. Lynch ("Lynch") stated that Husick had misrepresented information to a judge, to other court personnel, to Sheriff's Department officials, and to members of the general public.  (*Id.* at 1).  Lynch also declared in her letter that Husick had "potentially compromised the safety" of a judicial officer "by not following established security precautions regarding a defendant."  (*Id.*).  Making reference to "previous discussions" concerning Husick's "work performance," Lynch informed Husick in writing that he was being terminated because of the "latest incidents" involving misrepresentation and a breach of security.  (*Id.*).

On October 30, 2006, Husick filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that his discharge had constituted violations of both Title VII of the Civil Rights Act of 1964 ("Title VII") [42 U.S.C. § 2000e *et seq.*] and the Age Discrimination in Employment Act of 1967 ("ADEA") [29 U.S.C. § 621 *et seq.*].  (Docket No. 22-1).  The charge named the "Allegheny County Court of Common Pleas-Criminal Division" as the respondent.  (*Id.*).  Allegheny County, through the Allegheny County Law Department, filed with the EEOC a motion to dismiss Husick's complaint on the ground that it had not been filed in a timely manner.  (Docket No. 28-2 at 2-3).  The EEOC granted the motion on May 31, 2007, dismissing Husick's complaint on statute-of-limitations grounds.[1]  (Docket No.

_____

[1]Title VII and the ADEA generally require aggrieved individuals to file charges of discrimination with the EEOC within 180 days of the employment action alleged to have been unlawful.  42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(A).  This period of time is statutorily extended to 300 days where an individual initially commences proceedings with a state or local agency possessing the authority to redress similar forms of discrimination.  42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. §§ 626(d)(1)(B), 633(b).  Employment discrimination based on race, sex or age is prohibited by the Pennsylvania Human Relations Act ("PHRA") [43 PA. STAT. § 951 *et seq.*],

26-1 at 1).  Husick was provided with a notice informing him both of the administrative

dismissal of his complaint and of his "right to sue" under Title VII and the ADEA.  (*Id.*).

Husick filed a *pro se* complaint against Allegheny County on August 28, 2007, alleging

violations of Title VII and the ADEA.  (Docket No. 1).  On February 20, 2008, Allegheny

County filed a motion to dismiss Husick's complaint pursuant to Federal Rule of Civil Procedure

12(b)(6), contending that his case could not proceed because he had not exhausted his

administrative remedies in a timely manner, and because his complaint had not been prepared in

conformity with Federal Rule of Civil Procedure 10(b).  (Docket No. 10).  That same day, the

Court entered an order indicating that any party's response to a dispositive motion was to be filed

within 20 days of the filing of the motion.  (Docket No. 12 at ¶ 2).  Husick failed to respond to

Allegheny County's motion to dismiss within the requisite period of time.  Because no response

had been filed, the Court granted the motion to dismiss on March 17, 2008.  (Docket No. 13).

Husick appealed the dismissal to the United States Court of Appeals for the Third Circuit

on April 16, 2008.  (Docket No. 14).  In an opinion filed on December 30, 2008, the Court of

Appeals held that the dismissal of Husick's complaint had been contrary to its decision in

---

and administrative complaints arising thereunder are within the jurisdiction of the Pennsylvania Human Relations
Commission ("PHRC").  43 PA. STAT. §§ 955(a), 956-957, 959.  The EEOC has promulgated regulations adopting a
policy of "deferral" to state agencies such as the PHRC.  29 C.F.R. § 1601.13(a)(4)(i).  Because of this deferral
policy, the United States Court of Appeals for the Third Circuit has held that filings with the EEOC in Pennsylvania
should be regarded as filings with the PHRC, and that aggrieved individuals in Pennsylvania have 300 days (rather
than 180 days) to file their charges of discrimination.  *Colgan v. Fisher Scientific Co.*, 935 F.2d 1407, 1414-1415
(3d Cir. 1991).  Nevertheless, in *First Judicial District of Pennsylvania v. Pennsylvania Human Relations
Commission*, 727 A.2d 1110, 1112 (Pa. 1999), the Pennsylvania Supreme Court held that the PHRC has no
jurisdiction to adjudicate complaints against the Pennsylvania Judiciary.  Husick was clearly an employee of the
Pennsylvania Judiciary (even if it is assumed that he was also an employee of Allegheny County).  Since the PHRC
had no jurisdiction over his complaint, Husick was required to file his EEOC charge within 180 days of his
discharge.  42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(A).  Although Husick's complaint was filed within the
300-day limitations period applicable to most employees in Pennsylvania, it was not filed within the 180-day
limitations period applicable to employees of the Pennsylvania Judiciary.  (Docket No. 26-1 at 3).

*Stackhouse v. Mazurkiewicz*, 951 F.2d 29 (3d Cir. 1991).[2]  *Husick v. Allegheny County*, 304

Fed.Appx. 977, 979 (3d Cir. 2008).  The Court's prior order dismissing the case was vacated, and

the case was remanded for further proceedings.  *Id.*

On February 10, 2009, Husick filed his response to Allegheny County's motion to

dismiss.  (Docket Nos. 18 & 19).  A hearing concerning the motion to dismiss was held on

March 4, 2009.  (Docket No. 33).  Husick, who participated by telephone from his home in

Arizona, was placed under oath so that his statements could be regarded as testimonial evidence

in support of his case.  (*Id.* at 4, 10).  In a memorandum opinion and order dated June 18, 2009,

the Court denied the motion to dismiss without prejudice.[3]  *Husick v. Allegheny County*, Civil

Action No. 07-1175, 2009 WL 1743917, at *13, 2009 U.S. Dist. LEXIS 53502, at *47 (W.D.Pa.

June 18, 2009).  Allegheny County filed its answer to Husick's complaint on July 20, 2009.

(Docket No. 47).

Husick was deposed in the office of the Allegheny County Law Department on October

26, 2009.  (Docket No. 48).  A mediation session was conducted before Magistrate Judge Robert

C. Mitchell on October 27, 2009, but the parties were unable to reach a settlement agreement.

(Docket No. 51).  On January 4, 2010, Allegheny County filed a motion for summary judgment.

---

[2]In *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991), the United States Court of Appeals for the Third Circuit held that it is generally inappropriate for a district court to dismiss a *pro se* plaintiff's complaint solely because he or she has failed to file a timely response to the defendant's motion to dismiss.  In such a situation, dismissal is proper only where the plaintiff has disregarded a *specific* directive to file a response, or where an examination of the merits of the claim at issue reveals that it fails to state an actionable violation of the governing law.  *Stackhouse*, 951 F.2d at 30.

[3]Husick testified on March 4, 2009, that he had been led to believe that he had 300 days (rather than 180 days) to file his charge of discrimination with the EEOC.  (Docket No. 33 at 12, 15-18).  The Court found this testimony to be sufficient to establish a basis for equitable tolling (at least for purposes of the motion to dismiss). *Husick v. Allegheny County*, Civil Action No. 07-1175, 2009 WL 1743917, at *9, 2009 U.S. Dist. LEXIS 53502, at *36 (W.D.Pa. June 18, 2009)(indicating that a trier of fact could determine whether Husick had "exercised reasonable diligence for purposes of equitable tolling").

4

(Docket No. 55).  That motion is the subject of this memorandum opinion.

## III.   <u>Standard of Review</u>

Summary judgment may only be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*.  Pursuant to Federal Rule of Civil Procedure 56(c), the Court must enter summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In evaluating the evidence, the Court must interpret the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in his or her favor.  *Watson v. Abington Township*, 478 F.3d 144, 147 (3d Cir. 2007).  The burden is initially on the moving party to demonstrate that the evidence contained in the record does not create a genuine issue of material fact.  *Conoshenti v. Public Service Electric & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004).  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005).  Where the non-moving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the non-moving party's burden of proof.  *Celotex*, 477 U.S. at 322.  Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories in order to show that there is a genuine issue of material fact for trial.  *Id.* at 324.  The non-moving party cannot defeat a well-supported motion for summary

5

judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

IV.   **Discussion**

Allegheny County advances two arguments in support of its motion for summary judgment.  First, Allegheny County contends that *only* the Court of Common Pleas (and *not* Allegheny County) was Husick's "employer."  (Docket No. 56 at 3-5).  Second, Allegheny County asserts that Husick cannot establish a violation of Title VII or the ADEA (against *either* Allegheny County *or* the Court of Common Pleas) in any event.  (*Id.* at 6-7).  These issues will be addressed in sequence.

A.   **The Identity of Husick's Former "Employer"**

A 1968 amendment to the Pennsylvania Constitution provided for the creation of a "unified judicial system" which included Pennsylvania's "courts of common pleas."  PA. CONST., ART. V, § 1.  This constitutional mandate was subsequently implemented by the Pennsylvania Legislature.  42 PA. CONS. STAT. § 301.  When the Legislature provided for the creation of a "unified" Pennsylvania Judiciary, it also passed legislation requiring individual counties to "establish and maintain on their respective books" accounts "to be known as the judicial and related account[s]," from which the salaries of judicial employees working within their respective counties were to be paid.  42 PA. CONS. STAT. § 3541.  In *County of Allegheny v. Pennsylvania*, 534 A.2d 760, 765 (Pa. 1987), the Pennsylvania Supreme Court found the statutory provision providing for county-based funding of the individual "courts of common pleas" to be inconsistent with the Pennsylvania Constitution's mandate that the Pennsylvania Judiciary be "unified."  The judgment was stayed in order to provide the Pennsylvania Legislature with an opportunity to fund

6

the Pennsylvania Judiciary on a statewide basis, thereby leaving the reality of county-based

funding in place for the time being. *County of Allegheny*, 534 A.2d at 765. Therefore, judicial

employees such as Husick continued to be paid by their respective counties even though they

were not regarded as county employees under Pennsylvania law.

Under the law of Pennsylvania, Husick was an employee of the Court of Common Pleas.

The fact that he was paid from an account maintained by Allegheny County did not render him

an *employee* of Allegheny County for purposes of Pennsylvania law. *County of Lehigh v.*

*Pennsylvania Labor Relations Board*, 489 A.2d 1325, 1327 (Pa. 1985). It is clear that, for

purposes of employment discrimination law, Pennsylvania did not regard Husick as an employee

of Allegheny County. Indeed, the Pennsylvania Supreme Court has held that the Pennsylvania

Human Relations Commission ("PHRC") has no jurisdiction over charges of discrimination filed

by state judicial employees. *First Judicial District of Pennsylvania v. Pennsylvania Human*

*Relations Commission*, 727 A.2d 1110, 262-263 (Pa. 1999). Pennsylvania's characterization of

Husick's employment status, however, is not dispositive of his claims against Allegheny County

under Title VII and the ADEA. Congress has specifically defined the terms "employer" and

"employee" within the text of those statutes.[4] 42 U.S.C. § 2000e(b), (f); 29 U.S.C. § 630(b), (f).

Because Congress has provided its own statutory definitions for these terms, the existence (or

---

[4]Title VII defines the term "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ." 42 U.S.C. § 2000e(b). The term "person," as used in Title VII, includes "governments," "governmental agencies" and "political subdivisions." 42 U.S.C. § 2000e(a). The ADEA's definition of the term "employer," which expressly includes "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State," is not materially different from that contained in Title VII except for the fact that coverage is extended only to entities employing "twenty or more employees." 29 U.S.C. § 630(b). Both statutes define the term "employee" as an individual "employed by" an employer. 42 U.S.C. § 2000e(f); 29 U.S.C. § 630(f).

nonexistence) of an employment relationship between Husick and Allegheny County for purposes of Title VII and the ADEA is a question of *federal* law. *Cruz-Lovo v. Ryder System, Inc.*, 298 F.Supp.2d 1248, 1251 (S.D.Fla. 2003).

The parties do not appear to dispute that Allegheny County is an "employer" within the meaning of Title VII and the ADEA. Allegheny County contends that Husick was an "employee" of the Court of Common Pleas, and that he was not "employed by" Allegheny County within the meaning of Title VII and the ADEA.[5] (Docket No. 56 at 3-5). In *Graves v. Lowery*, 117 F.3d 723, 724 (3d Cir. 1997), the United States Court of Appeals for the Third Circuit held that employees of the Pennsylvania Judiciary, who were formally regarded as judicial employees (and not county employees) under Pennsylvania law, were not precluded from proceeding with Title VII claims against Dauphin County. The Court of Appeals explained that an "employer" such as the Pennsylvania Judiciary may "have the derivative right to delegate employer-type responsibilities to a county" while retaining the "inherent right" to hire and fire its own employees, thereby rendering both entities "employers" within the meaning of Title VII. *Graves*, 117 F.3d at 727. In other words, the interrelationship between two separate entities may be such that *both* are regarded as "employers" of the same individual under federal law. *National Labor Relations Board v. Browning-Ferris Industries of Pennsylvania, Inc.*, 691 F.2d 1117, 1121-1125 (3d Cir. 1982). "[T]he precise contours of an employment relationship can only be

---

[5]Both statutes provide that the term "employee" "shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate advisor with respect to the exercise of the constitutional or legal powers of the office." 42 U.S.C. § 2000e(f); 29 U.S.C. § 630(f). Allegheny County does not argue that Husick was excluded from the category of "employees" entitled to statutory protection by reason of his appointment by an elected judge (or a group of elected judges). The Court expresses no opinion as to whether such an argument would have been meritorious.

established by a careful factual inquiry."[6]  *Graves*, 117 F.3d at 729.

It is undisputed that Allegheny County paid Husick for his services.  (Docket No. 62-1).
The Court of Appeals has observed that because individual counties are statutorily *required* to
pay the salaries of judicial employees even where such employees are not subject to county
control or supervision, a judicial employee cannot establish that he or she is "employed by" a
county simply by showing that his or her compensation comes from the county's budget.
*Graves*, 117 F.3d at 728.  Nevertheless, the existence of an employment relationship between a
judicial employee and a county can be established with evidence that the county exercises "the
requisite control over the daily employment activities" of the employee, or with evidence that
certain county policies governing the conduct of county employees are likewise applicable to
judicial employees.  *Id.* at 728-729.  While not dispositive of the issue, a judicial employee's
subjective expectations concerning his or her relationship with a county is a factor relevant to a
determination as to whether that employee is "employed by" the county.  *Id.*

In an affidavit dated March 9, 2010, Husick declared that he had been covered by
Allegheny County's policies concerning vacation time and sick leave.  (Docket No. 62-2 at 1, ¶
3).  He stated that Allegheny County had retained control of his pension and health care plans.
(*Id.*, ¶ 4).  He asserted that the terms of his employment had been governed by collective
bargaining agreements entered into with Allegheny County, and that judicial employees had been
instructed to direct all internal complaints of discrimination to Allegheny County.  (*Id.* at 2, ¶¶ 6,
8).  In addition, Husick indicated that disabled judicial employees had received disability-related

---

[6]Although Husick's status as an employee of the Pennsylvania Judiciary (and not Allegheny County) under
Pennsylvania law is not dispositive of the issue, it is still a factor that weighs in favor of Allegheny County's position
that it did not "employ" Husick.  *Graves v. Lowery*, 117 F.3d 723, 729 (3d Cir. 1997).

9

benefits in accordance with policies adopted and implemented by Allegheny County.  (*Id.*, ¶ 7).

Lisa Franklin ("Franklin") and Alfred Russo ("Russo"), two of Husick's former co-workers, have

submitted companion affidavits attesting to the same facts included within Husick's affidavit.

(Docket Nos. 62-3 & 62-4).

Allegheny County argues that the Court should apply the "sham affidavit" doctrine and

disregard the affidavits submitted by Husick, Franklin and Russo.  (Docket No. 66 at 1-3).

Under the sham affidavit doctrine, "a court will disregard an affidavit inconsistent with an

affiant's prior deposition testimony when a party moves for summary judgment on the basis of

the deposition unless the party relying on the affidavit in opposition to the motion can present a

legitimate reason for the discrepancies between the deposition and the affidavit."  *Smith v.

Johnson & Johnson*, 593 F.3d 280, 285, n. 3 (3d Cir. 2010).  In support of its position, Allegheny

County has presented portions of the transcript of Husick's deposition.  On October 26, 2009,

Husick testified (in response to a question posed by Allegheny County's counsel) that his receipt

of paychecks from Allegheny County was his sole basis for concluding that he had been

"employed by" Allegheny County for purposes of Title VII and the ADEA.  (Docket No. 66-1 at

2).

The Court finds Allegheny County's argument to be unpersuasive for several reasons.

First of all, even if Husick's deposition testimony could be used to impugn the statements

contained in his subsequent affidavit, the statements made in the affidavits submitted by Franklin

and Russo would still be worthy of consideration.  Second, Allegheny County did not originally

submit portions of the deposition transcript in support of its motion for summary judgment.  The

testimonial evidence was not introduced until Allegheny County responded to Husick's latest

10

filing.[7]  Husick did not submit his affidavit to discount his prior deposition testimony.  Instead,

Allegheny County submitted portions of the deposition transcript to discount the statements

contained in Husick's affidavit.[8]  (Docket No. 66-1 at 1-2).  Third, the sham affidavit doctrine is

partially based on the assumption that deposition testimony is more reliable than statements

contained in an affidavit, since affidavits are often drafted by counsel for the express purpose of

defeating a motion for summary judgment.  *Jimenez v. All American Rathskeller, Inc.*, 503 F.3d

247, 253-254 (3d Cir. 2007).  This assumption carries considerably less force than usual where

an affidavit is submitted by a *pro se* plaintiff such as Husick.  Fourth, the Court takes judicial

notice of the fact that both Allegheny County and the Court of Common Pleas are named as

defendants in Franklin's action under the Family and Medical Leave Act ("FMLA") [29 U.S.C. §

2601 *et seq.*], thereby lending credence to the statements contained in her affidavit.  *Franklin v.*

*Allegheny County, et al*, No. GD-07-017049.  Finally, and most importantly, the statements

contained in Husick's affidavit are not in direct conflict with his prior deposition testimony in

any event.  While the source of Husick's paychecks may have been the only factor that came to

his mind as to why he believed (during the course of his deposition) that he had been an

---

[7]The Court acknowledges that Allegheny County, as a part of its original submission, produced a statement by Husick (in response to an interrogatory) indicating that the origin of his paychecks was his sole basis for believing that he had been an employee of Allegheny County.  (Docket No. 57-4 at 2).  Husick's response to the interrogatory, however, does not appear to have been exhaustive, despite the fact that the interrogatory itself requested "each and every fact" supporting his assertion that he had been an employee of Allegheny County.  (*Id.*).

[8]The Court does not mean to suggest that the order in which the competing pieces of evidence were submitted by the parties is dispositive of the applicability (or inapplicability) of the sham affidavit doctrine.  The United States Court of Appeals for the Third Circuit has refused to endorse a rule of law which "cabins sham affidavits to a particular sequence."  *In re: Citx Corp., Inc.*, 448 F.3d 672, 679 (3d Cir. 2006).  Nevertheless, Allegheny County's belated submission of Husick's deposition testimony undermines its contention that Husick's affidavit should be regarded as a "sham" affidavit created solely for the purpose of contradicting his earlier testimony.  It is doubtful that a *pro se* plaintiff would be inclined to fashion an affidavit in such a way as to refute testimonial evidence that has not been presented by the defendant in any event.

11

employee of Allegheny County, the statements contained in his subsequent affidavit appear to be the result of further reflection on his part.  In *Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703 (3d Cir. 1988), the United States Court of Appeals for the Third Circuit observed:

> We recognize that there are situations in which sworn testimony can quite properly be corrected by a subsequent affidavit.  Where the witness was confused at the earlier deposition or for some other reason misspoke, the subsequent correcting or clarifying affidavit may be sufficient to create a material dispute of fact.

*Martin*, 851 F.2d at 705.  Because the statements contained in Husick's affidavit *supplement* (rather than *contradict*) his prior deposition testimony, the Court has no basis for disregarding those statements.

In support of its motion for summary judgment, Allegheny County has presented documentary evidence suggesting that Husick received copies of policies adopted by the Court of Common Pleas (and not by Allegheny County) concerning absences for funerals, absences for jury duty, and compliance with the Americans with Disabilities Act of 1990 ("ADA") [42 U.S.C. § 12101 *et seq.*] in September 2002.  (Docket No. 57-6).  Allegheny County has also presented a copy of a document signed by Husick on July 27, 2001, indicating that he had received copies of "Court of Common Pleas" policies regarding matters such as sexual harassment, vacations, part-time employment benefits, the re-employment of former employees, employee participation in charitable events, the use of court information systems and equipment, and employee compliance with Pennsylvania's driver's license and automobile insurance requirements.  (Docket No. 57-7). The impact of this evidence, however, is somewhat obviated by statements contained in the affidavits submitted by Husick, Franklin and Russo indicating that Court of Common Pleas

12

employees had been subject to several policies maintained and controlled by Allegheny County. (Docket Nos. 62-2, 62-3 & 62-4).  At the hearing conducted on March 9, 2009, counsel for Allegheny County acknowledged that judicial employees were "included in the same health care plan as the *other county employees*."  (Docket No. 33 at 51)(emphasis added).  Furthermore, the Court notes that the Allegheny County Law Department (rather than counsel for the Administrative Office of Pennsylvania Courts) often responds to charges of discrimination filed with the EEOC by judicial employees, even where the Court of Common Pleas is named as the respondent.  (Docket No. 30-2).  Indeed, the Allegheny County Law Department responded to Husick's administrative complaint in this very case even though Husick's EEOC charge listed the Court of Common Pleas as his employer.  *Husick*, 2009 WL 1743917, at *9-13, 2009 U.S. Dist. LEXIS 53502, at *37-47.  Accordingly, there is a genuine issue of material fact as to whether Husick was "employed by" Allegheny County within the meaning of Title VII and the ADEA.  *Walters v. Washington County*, Civil Action No. 06-1355, 2009 U.S. Dist. LEXIS 23739, at *27-35 (W.D.Pa. March 23, 2009).

B.       **The Merits of Husick's Claims Under Title VII and the ADEA**

Since this is an employment discrimination case in which no "direct evidence" of discrimination is presented, the United States Supreme Court's analyses in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), provide the formulation for allocating the requisite burdens of proof and production for purposes of the instant motion for summary judgment.[9]  In an employment discrimination

---

[9]The *McDonnell Douglas-Burdine* burden-shifting framework does not apply in an employment discrimination case in which "direct evidence" of discrimination is presented.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).  "Direct evidence" of discrimination is evidence that is "so revealing of discriminatory animus

case of this kind, the plaintiff must establish a *prima facie* case of illegal discrimination. *McDonnell Douglas*, 411 U.S. at 802.  If a *prima facie* case of discrimination is established, the defendant must articulate legitimate, nondiscriminatory reasons for treating the plaintiff in an adverse manner.  *Id.* at 802-803.  If the defendant articulates legitimate, nondiscriminatory reasons for the plaintiff's adverse treatment, the plaintiff must demonstrate that the reasons given by the defendant for such treatment are merely a pretext for unlawful employment discrimination.  *Id.* at 804-805.  Evidence that an employer's stated reasons for an adverse employment action are unworthy of credence is one form of circumstantial evidence that a plaintiff can use to establish the existence of intentional discrimination.  *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003).

The plaintiff's burden of establishing a *prima facie* case of disparate treatment is not onerous.  *Burdine*, 450 U.S. at 253.  In order to establish a *prima facie* case of discrimination, the plaintiff need only show that: (1) he or she was a member of a statutorily-protected class; (2) he or she was aggrieved by an adverse employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of illegal discrimination.[10]  *Cobetto v.*

---

that it is not necessary to rely on any presumption" from the plaintiff's *prima facie* case to shift the applicable burden of production to the defendant.  *Starceski v. Westinghouse Electric Corp.*, 54 F.3d 1089, 1096, n. 4 (3d Cir. 1995). The evidence presented in this case does not constitute "direct evidence" of discrimination.

[10]The Court recites these elements in a general manner in order to accommodate different factual scenarios. In a "discharge" or "failure-to-hire" case, the plaintiff's qualifications for the position at issue are often relevant at the *prima facie* stage.  *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 366 (3d Cir. 2008).  This is because an inference of discrimination cannot be drawn where an employer discharges or refuses to hire an individual who is obviously unqualified for the desired position.  For instance, no inference of sex discrimination can be drawn where a hospital seeking to employ a new surgeon chooses to hire a female physician rather than a male with no medical background.  *Makky v. Chertoff*, 541 F.3d 205, 215 (3d Cir. 2008).  In that situation, consideration of the plaintiff's qualifications is appropriate at the *prima facie* stage, since deficient qualification is among the most common reasons relied upon by employers for declining to hire specific applicants for employment.  *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 352 (3d Cir. 1999).  In other instances, however, one's qualifications for a position may have nothing to do with the *prima facie* inquiry.  Where the relevant adverse employment action is the creation of a

14

*Wyeth Pharmaceuticals*, 619 F.Supp.2d 142, 153 (W.D.Pa. 2007).  The specific elements of a *prima facie* case generally "depend on the facts of the particular case" before the court and "cannot be established on a one-size-fits-all basis."  *Jones v. School District of Philadelphia*, 198 F.3d 403, 411 (3d Cir. 1999).  The *prima facie* inquiry "remains flexible and must be tailored to fit the specific context in which it is applied."  *Sarullo v. United States Postal Service*, 352 F.3d 789, 797-798 (3d Cir. 2003).  A *prima facie* case "raises an inference of discrimination" sufficient to shift the burden of production to the defendant because the court presumes that certain actions, if left unexplained, were "more likely than not based on the consideration of impermissible factors."  *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978). Because the *prima facie* inquiry in any case is fact-specific, "[t]he touchstone of the inquiry is whether the circumstances giving rise to an inference of discrimination are of *evidentiary value*, not whether they fit into a mechanical formula."  *Cobetto*, 619 F.Supp.2d at 153, n. 3 (emphasis in original), citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-313 (1996).

        If the plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to rebut the presumption of discrimination through the introduction of admissible evidence indicating that the challenged employment action was taken for legitimate, nondiscriminatory reasons.  *Burdine*, 450 U.S. at 254-255.  To sustain this burden, "[t]he

---

"hostile work environment" that has a detrimental effect on the "terms, conditions, or privileges" of one's employment, the aggrieved employee's qualifications for his or her position are not likely to have any relevance at all to the *prima facie* inquiry.  *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 276-277 (3d Cir. 2001).  The three elements identified by the Court are generally relevant in *all* employment discrimination cases.  All other issues at the *prima facie* stage are more accurately characterized as factors relevant to a more generalized inquiry as to whether a challenged employment action has occurred under circumstances giving rise to an inference of discrimination.  *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-313 (1996).

defendant need not persuade the court that it was actually motivated by the proffered reasons." *Id.* at 254.  The inquiry concerning whether the defendant has met its burden of production "can involve no credibility assessment," since "the burden-of-production determination necessarily *precedes* the credibility-assessment stage." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)(emphasis in original).  The defendant satisfies its burden of production, and rebuts the plaintiff's *prima facie* showing of discrimination, simply by introducing admissible evidence that, *if taken as true*, would *permit* a finding that the challenged employment action was taken for legitimate, nondiscriminatory reasons.  *Id.*

If the defendant meets its burden of production, the dispositive factual issue is framed with "sufficient clarity" to provide the plaintiff with "a full and fair opportunity to demonstrate pretext." *Burdine*, 450 U.S. at 255-256.  In order to establish that the defendant is liable for illegal employment discrimination, the plaintiff must ultimately convince the trier of fact that a discriminatory animus was the *real reason* for the adverse employment action at issue.  *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).  Liability cannot be established upon a jury's mere *disbelief* of the defendant's proffered reasons for an adverse employment action, but rather upon the jury's *affirmative belief* of the plaintiff's contention that the action was taken on the basis of an impermissible discriminatory criterion. *St. Mary's Honor Center*, 509 U.S. at 519 ("It is not enough, in other words, to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.")(emphasis in original).  Nevertheless, evidence that an employer's proffered reasons for an adverse employment action are false, when coupled with a plaintiff's *prima facie* case, may sufficiently undermine the employer's credibility to enable a reasonable trier of fact to conclude that illegal discrimination has occurred.  *Reeves v. Sanderson*

16

*Plumbing Products, Inc.*, 530 U.S. 133, 147-148 (2000).  Evidence used to establish a *prima facie* case of discrimination may also be relied upon to demonstrate pretext, since nothing about the *McDonnell Douglas-Burdine* burden-shifting framework requires a court to ration the evidence presented in a particular case among the *prima facie* and pretext stages of the analysis. *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 370 (3d Cir. 2008).  Proof that an employer's explanation for an adverse employment action is unworthy of credence can be a powerful form of circumstantial evidence that is probative of intentional discrimination.  *Reeves*, 530 U.S. at 147.  Circumstantial evidence is not only sufficient to sustain a finding of liability for intentional discrimination, "but may also be more certain, satisfying and persuasive than direct evidence."  *Desert Palace*, 539 U.S. at 100, quoting *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 508, n. 17 (1957).  Depending on the circumstances of the particular case at issue, a plaintiff can sometimes prevail on the basis of circumstantial evidence without introducing "additional, independent evidence of discrimination."  *Reeves*, 530 U.S. at 149.  Whether summary judgment is warranted in a given case depends upon the strength of the plaintiff's *prima facie* case, the probative value of the evidence discrediting the defendant's proffered reasons for the challenged employment action, and the presence or absence of additional evidence that may properly be considered by a court in determining whether a judgment as a matter of law is appropriate.  *Id.* at 148-149.

      1.        **Age Discrimination Under the ADEA**

      The ADEA declares it to be unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's

age . . . ." 29 U.S.C. § 623(a). The ADEA makes clear that its prohibitions are "limited to individuals who are at least 40 years of age." Since he was 53 years old at the time of his discharge, Husick was within the class of persons entitled to statutory protection from age discrimination. (Docket No. 62-2 at 3, ¶ 15). In order to establish a violation of the ADEA, Husick must show that his age had a "determinative influence" on Allegheny County's decision to discharge him.[11] *Glanzman v. Metropolitan Management Corp.*, 391 F.3d 506, 512 (3d Cir. 2004). This means that he must show that his age was a "but-for" cause of his discharge. *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343, 2350-2351 (2009).

In *General Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581, 584 (2004), the Supreme Court held that the ADEA does not prohibit covered employers from discriminating against younger employees in favor of older employees (even where the younger employees are within the class of persons entitled to statutory protection). Speaking through Justice Souter, the Supreme Court explained that the word "age," as used in the ADEA's anti-discrimination provision, essentially means "old age." *General Dynamics*, 540 U.S. at 596. Therefore, Husick cannot establish a violation of the ADEA by showing that Allegheny County terminated his employment because it wanted to hire an "older" employee.[12] Moreover, in a disparate-treatment case such as this, a violation of the ADEA cannot be premised solely on differential treatment

---

[11]Because a genuine factual dispute exists as to whether Husick was "employed by" Allegheny County for purposes of Title VII and the ADEA, the Court assumes *arguendo* that such an employment relationship existed.

[12]The Court does not mean to suggest that a plaintiff could never prevail in a discriminatory discharge action under the ADEA without showing that he or she was replaced by a younger individual. Even if a discharged employee has been replaced by an older individual, it is possible that such an employee could demonstrate that his or her employer would not have discharged (or did not discharge) a younger, similarly situated employee. *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 353-357 (3d Cir. 1999). The age of a discharged employee's replacement is immaterial where an employer "terminates an older employee for a reason for which it would not have terminated a younger employee." *Fitzpatrick v. National Mobile Television*, 364 F.Supp.2d 483, 491, n. 4 (M.D.Pa. 2005).

based on a factor that is closely correlated with (but analytically distinct from) age. *Smith v. City of Jackson*, 544 U.S. 228, 236-240 (2005)(plurality opinion); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 608-611 (1993).

It is undisputed that Husick was within the class of persons entitled to statutory protection under the ADEA, that he was "discharged" within the meaning of that statute, and that he was qualified for the position of Minute Clerk.  In order to establish a *prima facie* case of age discrimination, Husick must produce evidence adequate to create an inference that he was terminated *because of his age*.  *O'Connor*, 517 U.S. at 312-313.  This step of the analysis ordinarily requires a showing that the plaintiff was replaced by an individual who was sufficiently younger than him or her to permit an inference of age discrimination to be drawn. *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009).  Where such a showing cannot be made, a plaintiff can still establish a *prima facie* case under the ADEA by producing other forms of evidence indicating that the challenged employment action was motivated by his or her age. *Roach v. American Radio Systems Corp.*, 80 F.Supp.2d 530, 532 (W.D.Pa. 1999).  If an employer "terminates an older employee for a reason for which it would not have terminated a younger employee, the age of the older employee's replacement is immaterial." *Fitzpatrick v. National Mobile Television*, 364 F.Supp.2d 483, 491, n. 4 (M.D.Pa. 2005).  Although the *prima facie* inquiry need not adhere to a rigid formula, a plaintiff cannot shift the burden of production to the defendant simply by expressing a subjective belief that the challenged employment action was motivated by his or her age. *Wilson v. Blockbuster, Inc.*, 571 F.Supp.2d 641, 647 (E.D.Pa. 2008).

At the hearing conducted on March 4, 2009, Husick testified that he had no firsthand knowledge concerning the identity of his replacement.  (Docket No. 33 at 28-31).  He expressed

a subjective belief that he had been replaced by a Caucasian male who "was in his late 30's." (*Id.* at 29).  In his brief in response to Allegheny County's motion for summary judgment, Husick pointed out that information concerning the identity of his replacement was within the "exclusive possession and control" of Allegheny County.  (Docket No. 63 at 12).  Allegheny County responded by submitting an affidavit signed on April 12, 2010, by Court of Common Pleas Human Resources Manager Charles Kennedy ("Kennedy") identifying Carol Moss ("Moss") as Husick's replacement.  (Docket No. 65-1 at 2, ¶ 9).  Although Kennedy did not provide Moss' actual date of birth, he stated that she had been born in 1947.  (*Id.*).  Hence, Moss was between four and five years older than Husick.  Nevertheless, in an affidavit submitted by Husick on April 29, 2010, Russo declared that Daniel Creegan ("Creegan"), an individual who was "substantially younger" than Husick, had been Husick's actual replacement.  (Docket No. 69-1 at 1, ¶ 4).  Russo further stated that Moss had already been employed by Allegheny County as a Minute Clerk prior to Husick's discharge, and that she had simply assumed some of Husick's duties subsequent to his termination.  (*Id.*, ¶¶ 2-3).

Since Husick is the party opposing the entry of summary judgment, the evidence must be viewed in the light most favorable to him.  *Colgan v. Fisher Scientific Co.*, 935 F.2d 1407, 1422 (3d Cir. 1991).  Given the statements contained in Russo's affidavit indicating that Husick was actually replaced by Creegan (and not by Moss), a reasonable trier of fact could find that Husick was replaced by a "substantially younger" individual.  In addition, Husick testified at the hearing that Judge Donna Jo McDaniel ("Judge McDaniel"), the Administrative Judge of the Court of Common Pleas' Criminal Division, had verbally expressed her intention to get rid of older employees because they were not amenable to changing their work-related habits to suit her

preferences.  (Docket No. 33 at 31-33).  According to Husick's testimony, Judge McDaniel had

informed him of his termination by saying, "[Y]ou have just been here too long[,] and we just

don't need employees like you."  (*Id.* at 32).  Where a decisionmaker utters such statements

contemporaneously with the challenged adverse employment action, a reasonable inference of

illicit discrimination can be drawn.  *Abdul-Hakim v. Goodyear Tire & Rubber Co.*, 455

F.Supp.2d 1267, 1278 (D.Kan. 2006).  For purposes of the pending motion for summary

judgment, Husick has established a *prima facie* case of age discrimination.[13]

Husick's *prima facie* case of age discrimination shifts the burden of production to

Allegheny County to articulate a legitimate, nondiscriminatory reason for discharging Husick.

*Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006).  In *Burdine*, the Supreme Court made

the following statements about the defendant's burden of production in an employment

discrimination case such as this:

> The burden that shifts to the defendant, therefore, is to rebut the presumption of
> discrimination by producing evidence that the plaintiff was rejected, or someone
> else was preferred, for a legitimate, nondiscriminatory reason.  The defendant
> need not persuade the court that it was actually motivated by the proffered
> reasons.  See [*Board of Trustees of Keene State College v.*] *Sweeney*, [439 U.S.
> 24,] 25 [(1978)].  It is sufficient if the defendant's evidence raises a genuine issue
> of fact as to whether it discriminated against the plaintiff.  To accomplish this, the
> defendant must clearly set forth, through the introduction of admissible evidence,
> the reasons for the plaintiff's rejection.  The explanation provided must be legally
> sufficient to justify a judgment for the defendant.  If the defendant carries this
> burden of production, the presumption raised by the prima facie case is rebutted,
> and the factual inquiry proceeds to a new level of specificity.  Placing this burden
> of production on the defendant thus serves simultaneously to meet the plaintiff's
> prima facie case by presenting a legitimate reason for the action and to frame the

---

[13]It is firmly established that "there is a low bar for establishing a *prima facie* case of employment
discrimination."  *Scheidemantle v. Slippery Rock University State System of Higher Education*, 470 F.3d 535, 539
(3d Cir. 2006).  For this reason, the quantum of evidence needed to establish a *prima facie* case of discrimination is
often smaller than that needed to defeat a motion for summary judgment at the pretext stage of the *McDonnell
Douglas-Burdine* burden-shifting framework.  *Simpson v. Kay Jewelers*, 142 F.3d 639, 646 (3d Cir. 1998).

> factual issue with sufficient clarity so that the plaintiff will have a full and fair
> opportunity to demonstrate pretext.  The sufficiency of the defendant's evidence
> should be evaluated by the extent to which it fulfills these functions.

*Burdine*, 450 U.S. at 254-256 (footnotes omitted).  As this language from *Burdine* makes clear, a

defendant's proffered reason for an adverse employment action "must be legally sufficient to

justify a judgment for the defendant," and must "frame the factual issue with sufficient clarity" to

give the plaintiff "a full and fair opportunity to demonstrate pretext," in order to satisfy the

defendant's burden of production.  *Id.*  Since the defendant's explanation for a challenged

employment action "must be clear and reasonably specific," it necessarily follows that some

proffered explanations will be "legally insufficient" to rebut a *prima facie* case of discrimination.

*Connor v. Fort Gordon Bus Co.*, 761 F.2d 1495, 1499 (11th Cir. 1985).

In support of its decision to terminate Husick's employment, Allegheny County has

presented a letter from Lynch to Husick dated January 25, 2006.  (Docket No. 57-4).  The

relevant portion of that letter stated as follows:

> It has been brought to my attention that you have misrepresented
> information to a Criminal Division Judge to whom you were assigned, to court
> personnel, the Sheriff's Department and members of the public.  In a separate
> matter, [sic] potentially compromised the safety of this Judicial Officer by not
> following established security precautions regarding a defendant.  These actions
> are inappropriate for a Senior Minute Clerk and undermine the integrity of the
> court system and the safety of our staff and the public.
> Based upon these latest incidents, and our previous discussions regarding
> your work performance, the Court has decided to terminate your employment
> effective today.

(*Id.* at 1).  This letter is the *only* evidence presented by Allegheny County concerning its reasons

22

for discharging Husick.[14]

At the hearing, Husick testified that he was unable to recall the specific incidents referenced in Lynch's letter.  (Docket No. 33 at 41-42).  Although he remembered being reprimanded by Lynch for insisting that a defendant appear for a pretrial conference even though that defendant had a relative who was hospitalized, Husick stated that he could not connect the statements in Lynch's letter with particular lapses committed by him during his tenure as a Minute Clerk.  (*Id.* at 41-45).  At his deposition, Husick again testified that he had no recollection of the events described in the letter informing him of his termination.  (Docket No. 66-2 at 3-4).  When questioned at the hearing about the reasons for Husick's discharge, counsel for Allegheny County was unable to "address the specifics" of the termination decision.  (Docket No. 33 at 50).  She referred only to "general conversations" with Allegheny County personnel concerning "serious problems" with the "job performance" and "conduct" of Husick.  (*Id.*).

Allegheny County's evidence concerning its reasons for discharging Husick (which consists solely of a copy of Lynch's letter of January 25, 2006) is insufficient to satisfy Allegheny County's burden of production for two independent reasons.  First of all, it is too general to give Husick "a full and fair opportunity to demonstrate pretext."  *Burdine*, 450 U.S. at 256.  In addition, it is not "legally sufficient to justify a judgment" in favor of Allegheny County, since no affidavit or deposition testimony has been presented in support of the letter's contents.  *Id.* at 255.  Under similar circumstances, federal courts have held that the defendant's burden of

---

[14]Most of the evidence presented by Allegheny County in support of its motion for summary judgment relates solely to its argument that Husick was not a county employee.  Kennedy's affidavit is relevant to the *prima facie* inquiry under the ADEA, since it purported to identify Moss as Husick's replacement.  (Docket No. 65-1 at 2, ¶ 9).  Nevertheless, it has nothing to do with Allegheny County's reasons for discharging Husick.  Since Kennedy's affidavit is contradicted by the second affidavit submitted by Russo, Allegheny County is not entitled to summary judgment with respect to Husick's ADEA claim.  (Docket No. 69-1 at 1, ¶¶ 2-4).

production has not been met, and that the plaintiff's *prima facie* case has not been sufficiently impugned to warrant a judgment in favor of the defendant. *Alvarado v. Texas Rangers*, 492 F.3d 605, 617 (5th Cir. 2007); *Equal Employment Opportunity Commission v. Target Corp.*, 460 F.3d 946, 957-959 (7th Cir. 2006); *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004); *Bates v. Greyhound Lines, Inc.*, 81 F.Supp.2d 1292, 1301-1303 (N.D.Fla. 2000); *Halfond v. Legal Aid Society*, 70 F.Supp.2d 155, 161-163 (E.D.N.Y. 1998); *Grier v. Secretary of the Navy*, 677 F.Supp. 362, 367 (E.D.Pa. 1988). Since Allegheny County has failed to satisfy its burden of production under *Burdine*, its motion for summary judgment will be denied with respect to Husick's age discrimination claim under the ADEA.

### 2.    Race and Sex Discrimination Under Title VII

Title VII declares it to be an "unlawful employment practice" for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Husick's complaint alleges that he was discharged because of his race and sex. (Docket No. 1 at 4). As a white male, Husick was entitled to statutory protection under Title VII from discrimination based on his race and sex. *McDonald v. Sante Fe Trail Transportation Co.*, 427 U.S. 273, 278-280 (1976).

Allegheny County seeks the entry of summary judgment with respect to all of Husick's claims. (Docket No. 56 at 6-7). In his responsive briefs, Husick has addressed only his age discrimination claim under the ADEA. (Docket Nos. 63 & 69). He has not addressed his race and sex discrimination claims under Title VII. Federal Rule of Civil Procedure 56(e)(2)

24

provides:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, *if appropriate*, be entered against that party.

FED. R. CIV. P. 56(e)(2)(emphasis added).  The United States Court of Appeals for the Third Circuit has held that the phrase "if appropriate," as used in Rule 56(e)(2), precludes the entry of summary judgment in favor of a defendant solely because of the plaintiff's failure to respond to the defendant's motion for summary judgment.  *Anchorage Associates v. Virgin Islands Board of Tax Review & Tax Assessor*, 922 F.2d 168, 174-175 (3d Cir. 1990).  Therefore, Allegheny County's motion for summary judgment cannot be granted as to Husick's Title VII claims simply because Husick has failed or neglected to address those claims in his briefs.  The Court must independently consider whether evidentiary deficiencies warrant the entry of summary judgment in favor of Allegheny County.  *Id.* at 175.

As noted earlier, it is undisputed that Husick was qualified to serve as a Minute Clerk, and that he was "discharged" from his position.  In order to establish a *prima facie* case of race or sex discrimination, Husick need not show that he was replaced by someone who did not share his statutorily-protected traits.[15]  *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 353-357 (3d

---

[15]The Court uses the term "statutorily-protected traits" because it accurately describes the nature of Husick's protected status.  The term "protected class" makes sense in the ADEA context, since the ADEA protects only individuals who have reached the age of 40.  29 U.S.C. § 631(a).  Moreover, the ADEA only prohibits discrimination in one direction (*i.e.*, discrimination which favors the young and disfavors the old).  *General Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581, 584-600 (2004).  The term "protected class" can be misleading when used in the Title VII context.  Title VII prohibits discrimination against all races and against both sexes.  *McDonald v. Sante Fe Trail Transportation Co.*, 427 U.S. 273, 278-280 (1976).  Consequently, every individual employed by a covered "employer" is within the class of persons entitled to statutory protection under Title VII.

Cir. 1999).  Instead, he need only present evidence adequate to create an inference that he was

discharged *because of his race*, or *because of his sex*.  *Id.* at 355-356; *O'Connor*, 517 U.S. at

312-313.

At the hearing, Husick described a conversation between him and Judge McDaniel that

had occurred in 2004, shortly after Judge McDaniel had become the Administrative Judge of the

Criminal Division.  Husick testified that Judge McDaniel had told him that he would work

exclusively for Judge Cheryl Allen ("Judge Allen"), a black female, and that he would never

again work for a "male judge" or a "white judge."  (Docket No. 33 at 34).  According to Husick,

Judge McDaniel had tried to convince him to resign, suggesting that he would not fit in with the

other members of Judge Allen's staff.  (*Id.*).  Husick testified that Judge McDaniel had stressed

that Judge Allen's staff consisted entirely of black women.  (*Id.*).  This conversation allegedly

occurred 22 months before Husick was terminated.  (*Id.* at 36).  He worked for Judge Allen

during the intervening period of time.  (*Id.*).

The United States Court of Appeals for the Third Circuit has observed that, in the

employment discrimination context, "stray remarks by non-decisionmakers or by decisionmakers

unrelated to the decision process are rarely given great weight, particularly if they were made

temporally remote from the date of the decision."  *Brewer v. Quaker State Oil Refining Corp.*, 72

F.3d 326, 333 (3d Cir. 1995).  Nonetheless, the Court of Appeals has also noted that "statements

temporally remote from the decision at issue" may be properly used by a plaintiff "to build a

circumstantial case of discrimination."  *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1214 (3d Cir.

1995).  In this case, Judge McDaniel was apparently the person responsible for discharging

Husick.  (Docket No. 33 at 32).  Her comments to Husick in 2004 cannot be fairly characterized

as wholly "unrelated to the decision process," since they were allegedly made during a discussion about Husick's continued employment with Allegheny County.[16] (*Id.* at 34-35). Indeed, Judge McDaniel allegedly threatened to terminate Husick if he did not agree to work for Judge Allen. (Docket No. 33 at 35). Furthermore, the evidentiary hurdle that a plaintiff must surmount is significantly lower at the *prima facie* stage than it is at the pretext stage. *Simpson v. Kay Jewelers*, 142 F.3d 639, 646 (3d Cir. 1998)("Such an inference may be acceptable at the prima facie stage of the analysis, where the inquiry is based on a few generalized factors, but not necessarily at the pretext stage where the factual inquiry into the alleged discriminatory motives of the employer has risen to a new level of specificity.")(internal citations omitted). Since Judge McDaniel's statements could give rise to an inference that the challenged termination decision was motivated by Husick's race and sex, Husick has established a *prima facie* case of discrimination under Title VII (at least for purposes of summary judgment).

The burden has shifted to Allegheny County to articulate a legitimate, nondiscriminatory reason for discharging Husick. *McDonnell Douglas*, 411 U.S. at 802. The Court has already concluded that Lynch's letter informing Husick of his termination is insufficient to satisfy Allegheny County's burden of production with respect to Husick's age discrimination claim under the ADEA. That reasoning applies with equal force to Husick's race and sex discrimination claims under Title VII. Since Allegheny County has failed to satisfy its burden of production, the factual issue concerning whether Husick was discharged because of his statutorily-protected traits must be decided by the trier of fact. *Patrick*, 394 F.3d at 320.

---

[16]Because the evidence must be viewed in the light most favorable to Husick at this stage in the litigation, the Court must assume the truth of his testimony. *Mest v. Cabot Corp.*, 449 F.3d 502, 514 (3d Cir. 2006).

Allegheny County's motion for summary judgment will be denied with respect to Husick's race and sex discrimination claims under Title VII.

### 3.      The Retaliation Claims

Title VII and the ADEA both contain provisions prohibiting covered employers from discriminating against an employee because he or she has "opposed any practice" made "unlawful" under the substantive provisions of those statutes, or because he or she "has made a charge, testified, assisted, or participated in any manner in an investigation" or other "proceeding" concerning prohibited discriminatory practices.  42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d).  Husick alleges that he was subjected to "retaliation" for not resigning in February 2004, when Judge McDaniel allegedly tried to convince him to terminate his employment with Allegheny County.  (Docket No. 1 at 4).  Although the parties have not adequately briefed the issue of retaliation, the Court will examine the evidentiary record in order to determine whether Allegheny County is entitled to summary judgment with respect to Husick's retaliation claims. *Anchorage Associates*, 922 F.2d at 175.

The record contains no evidence that Husick participated in an investigation or proceeding conducted by the EEOC *prior* to his discharge.  Indeed, Husick testified that he had initially avoided seeking redress with the EEOC *after* his discharge because some attorneys had told him that less formal avenues of communication might prove to be more efficient.  (Docket No. 33 at 12).  Therefore, Husick obviously cannot show that Allegheny County terminated his employment because he had "participated" in an investigation or proceeding conducted by the EEOC.  To the extent that Husick attempts to pursue retaliation claims under Title VII and the ADEA, the Court understands such claims to arise under the "opposition" clauses of those

28

statutes.

In the absence of "direct evidence" of retaliatory animus, a retaliation case brought under Title VII or the ADEA must be evaluated in accordance with the *McDonnell Douglas-Burdine* burden-shifting framework. *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005). In order to establish a *prima facie* case of retaliation, Husick must show that: (1) he engaged in statutorily-protected conduct (*i.e.*, he "opposed" a practice made "unlawful" by Title VII or the ADEA); (2) Allegheny County took a "materially adverse"[17] action against him; and (3) there was a causal connection between his statutorily-protected conduct and Allegheny County's "materially adverse" action. *LeBoon v. Lancaster Jewish Community Center Association*, 503 F.3d 217, 231 (3d Cir. 2007). There is no question that Husick's discharge constituted a "materially adverse" action. *Johnson v. McGraw-Hill Companies*, 451 F.Supp.2d 681, 711 (W.D.Pa. 2006). Thus, only the first and third elements of the *prima facie* inquiry are at issue.

Husick testified that Judge McDaniel had suggested that he resign in 2004, shortly after she had begun her tenure as the Administrative Judge of the Criminal Division. (Docket No. 33 at 35). On that occasion, Judge McDaniel allegedly threatened to discharge Husick if he did not agree to work for Judge Allen. (*Id.*). Husick apparently construed Judge McDaniel's comments to mean that he would not enjoy working with a staff consisting entirely of black women. (*Id.* at 34). Desiring to retain his job, Husick allegedly refused to resign. (Docket No. 1 at 4).

In order to proceed with his retaliation claims, Husick must show that he "opposed" conduct made unlawful by Title VII or the ADEA. The Supreme Court has indicated that an

---

[17]An action is considered to be "materially adverse" to an employee if it might have dissuaded an objectively reasonable employee from engaging in statutorily-protected conduct. *Burlington Northern & Sante Fe Railway Co. v. White*, 548 U.S. 53, 67-71 (2006).

employee may "oppose" an unlawful act of discrimination simply by refusing to assent to it. *Crawford v. Metropolitan Government of Nashville & Davidson County*, 129 S.Ct. 846, 851 (2009)("And we would call it 'opposition' if an employee took a stand against an employer's discriminatory practices not by 'instigating' action, but by standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons."). Consequently, the Court assumes *arguendo* that Husick's alleged refusal to resign constituted "opposition" to Judge McDaniel's statements. Husick must also show that he was acting pursuant to an objectively reasonable belief that the conduct that he was "opposing" (*i.e.*, Judge McDaniel's attempt to convince him to resign) was actually violative of Title VII or the ADEA. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996). Given that Judge McDaniel's statements (as relayed by Husick) were indicative of a discriminatory state of mind, the Court assumes *arguendo* that Husick reasonably believed that Allegheny County was attempting to terminate his employment in violation of Title VII and the ADEA.

Even if it is assumed that Husick's refusal to resign constituted statutorily-protected "opposition" to trait-based discrimination, the record does not contain evidence sufficient to enable a reasonable trier of fact to infer that Allegheny County "retaliated" against Husick for engaging in such "opposition." By Husick's own admission, roughly 22 months elapsed between his conversation with Judge McDaniel and his subsequent termination. (Docket No. 33 at 36). This period of time between Husick's statutorily-protected conduct and his discharge was simply too long to permit an inference that Judge McDaniel was acting on the basis of a retaliatory animus. *Clark County School District v. Breeden*, 532 U.S. 268, 273-274 (2001). Husick has not presented any additional forms of evidence indicating that Judge McDaniel retaliated against

30

him for his previous refusal to resign.  *Kachmar v. Sungard Data Systems, Inc.*, 109 F.3d 173, 177-179 (3d Cir. 1997).  Therefore, he cannot establish a *prima facie* case of retaliation under Title VII or the ADEA.[18]  Allegheny County is entitled to summary judgment with respect to Husick's retaliation claims.

**V.      Conclusion**

There is a genuine issue of material fact as to whether Husick was "employed by" Allegheny County within the meaning of Title VII and the ADEA.  Husick has established *prima facie* cases of trait-based discrimination under Title VII and the ADEA.  Because Allegheny County has failed to satisfy its burden of production under *Burdine*, its motion for summary judgment will be denied with respect to Husick's trait-based discrimination claims.  *Patrick*, 394 F.3d at 320.  Nevertheless, the evidentiary record does not give rise to an inference that Husick was discharged in retaliation for his previous refusal to resign at Judge McDaniel's request.  Accordingly, summary judgment will be entered in favor of Allegheny County with respect to Husick's retaliation claims under Title VII and the ADEA.

BY THE COURT:

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

---

[18] The *prima facie* inquiry concerning a retaliation claim can sometimes be equated with the *prima facie* inquiry concerning a trait-based discrimination claim.  *Asmo v. Keane, Inc.*, 471 F.3d 588, 593-594 (6th Cir. 2006)(analogizing the lapse of time between an employee's statutorily-protected conduct and an alleged act of retaliation to the lapse of time between an employer's learning of a female employee's pregnancy and an alleged act of pregnancy-based discrimination).  The inquiries concerning these two types of claims, however, cannot be equated in this case.  While Judge McDaniel's statements to Husick in 2004 (as relayed by Husick) were indicative of a trait-based bias, they were not similarly indicative of a *retaliatory* animus.  (Docket No. 33 at 34).  For this reason, those statements may reasonably give rise to an inference of trait-based discrimination even though they do not give rise to an inference of retaliation.

Dated: May 10, 2010.

cc:      All counsel of record

         Robert J. Husick
         19473 North Desert Mesa
         Surprise, AZ 85374
         Email: rjhx2@hotmail.com